## Banks *versus* Ammon.

A failure of title because of a prior transfer by the vendor without notice to the vendee, is a good defence against the recovery of the purchase-money.

A deed of land, some of the corners of which are described but not its locality, and an actual transfer of possession, will pass a good title.

A tenant for life, whose estate has been sequestrated, but who holds adversely to the sequestrator, and who subsequently sells his estate, cannot, nor can those claiming under him, set up the title of the sequestrator to prevent a recovery of possession by the owner of the life estate.

A purchaser at a judicial sale is protected from defects in a title apparently good.

The record of a deed of land, the locality of which is not given, nor any definite marks of identification, is not notice to a purchaser at a judicial sale, nor will it put him on inquiry.

ERROR to the Common Pleas of *Armstrong county*.

This was an action of ejectment brought by Andrew Banks against Henry Ammon. The facts of the case and the points raised upon the trial sufficiently appear in the opinion of this court.

————, for plaintiff in error.

*Golden* and *Fulton*, for defendant in error.

[Banks *v*. Ammon.]

The opinion of the court was delivered by

KNOX, J.—We cannot say there was error in the rejection of James M. Banks as a witness. He had conveyed the title under which the plaintiff claimed to John M. Banks, who had conveyed to the plaintiff, Andrew Banks. Now if the conveyance from James M. Banks (the offered witness) to John M. Banks was set aside by virtue of the prior assignment to Hutchinson, James M. Banks could not recover from John M. Banks the unpaid purchase-money. James was therefore interested in establishing the validity of his deed to John over the assignment to Hutchinson. We do not wish to be understood as saying that in all cases a failure of title will, in the absence of warranty, preclude the vendor from recovering the unpaid purchase-money; but where the failure is owing to a prior transfer of the title by the vendor without notice to the vendee, it would be a good defence against the recovery of the purchase-money, alike because of fraud and failure of consideration.

Did the Court of Common Pleas err in directing a verdict for the defendant ?

It is admitted that the legal title to the land in dispute prior to August, 1832, was in Joseph Hutchinson, who on the 14th of August, 1832, executed the following conveyance, said to include the land in controversy, to James M. Banks, viz. :—

"Know all men by these presents, that I, Joseph Hutchinson, of Armstrong county, Pennsylvania, do grant and lease unto James M. Banks for and during his natural life, and so bind myself, my heirs, assigns, executors, and administrators, to make unto his son, Andrew Banks, a good and sufficient title to the following described tract or parcel of land, lying as follows, viz.: beginning at a servisberry corner, thence north to a white oak, thence east to white oak, thence south to limestone quarry, thence to a white oak: all these trees are marked for the purpose of running off the above described land.

"As witness I have hereunto set my hand and seal this 14th day of August, 1832.

"Signed          "JOSEPH HUTCHINSON." [L. S.]

This instrument was recorded in September, 1839. Some time in 1832 or 1833, Banks took possession, made improvements, and resided upon the land until 1841 or 1842, when he removed from it. To September Term, 1841, a *fi. fa.* issued at the suit of Joseph Buffington and H. N. Lee against James M. Banks, and which was levied upon the life estate of the defendant. A sequestrator was appointed in September, 1841, and a writ of sequestration was issued to June Term, 1842; but the actual possession of the premises was never taken by the sequestrator.

Whilst James M. Banks was in possession of the land, he made

[Banks *v.* Ammon.]

an assignment of his lease for life to James Hutchinson, who subsequently transferred it to Joseph Hutchinson, his brother. As this assignment was lost, parol evidence was given of its contents, and its precise character was left somewhat uncertain. The evidence tended to prove that it was nothing but a pledge for the repayment of a sum of money, for which James Hutchinson was Banks's security. There was also evidence given upon behalf of the plaintiff, that land had been cleared by Mrs. Banks and her sons for Joseph Hutchinson, to reimburse him for the money which he had paid to Sloan's executors, and which formed the consideration of the assignment from Banks to James Hutchinson. Soon after Banks left the land, Joseph Hutchinson took possession, and kept it until his death in the fall of 1844. In March, 1845, his administrators petitioned the Orphans' Court for leave to sell real estate for payment of debts. An order was issued for the sale of the land in controversy, and it was accordingly sold in September, 1845, to Jacob McCartney. The sale was confirmed by the Orphans' Court, and the administrators made a deed to the purchaser for the land. McCartney conveyed to Hanson, and Hanson to Ammon the defendant.

The defendant contends that the charge of the court below was right, 1. Because the description in the deed from Joseph Hutchinson to James M. Banks was too indefinite to pass the title of the land in question. 2. That if Banks even became the owner of the land, his estate was divested by his assignment to James Hutchinson. 3. That the life estate of James M. Banks passed to the sequestrator, and therefore a sale by him subsequent to the sequestration would not authorize his vendee to recover the possession even from an intruder; and 4. That the purchaser at Orphans' Court sale, and his subsequent transferees, were protected from an outstanding title for want of notice thereof.

If either of the above positions is sustainable, the judgment must be affirmed. Let us consider them. As between Joseph Hutchinson and James M. Banks, it is clear that the description in the deed of 14th August, 1832, accompanied as it was by actual possession, and by evidence that particular trees described in the deed were actually marked by the parties as corners, was sufficient to pass the legal title to the land. Whether the estate of Banks was divested by the assignment to James Hutchinson, was, under the evidence, a question of fact for the jury. If the assignment was an absolute sale, of course Banks's estate was gone; but if it was a mere pledge, to be redeemed upon the payment of a certain sum of money, and the money was afterwards paid by Banks, or any one for him, the effect of the assignment was destroyed by the payment of the money. Next, as to the sequestration. We have already said that the sequestrator was appointed on the 25th September, 1841. On the 17th June,

[Banks *v.* Ammon.]

1846, he reported that he had rented the premises to George Shryock for $20 per year, but that no rent was paid because Joseph Hutchinson held the possession adversely. No steps having been taken by the sequestrator to recover the possession for so long a period of time, as between the parties to this suit the presumption is that the sequestration was at an end; and, besides, as Joseph Hutchinson denied the right of the sequestrator to the possession, and by his acts prevented the tenant of the sequestrator from taking possession, neither he nor those claiming under him can be permitted to set up the title of the sequestrator in order to prevent the recovery of the possession by the owner of the life estate.

There remains to be considered the question of notice to the purchasers of the outstanding title. The rule of *caveat emptor* applies to a purchaser at a judicial sale, but he is not bound to see what is not to be seen. He is protected by the recording acts, and secret defects in a title apparently good, are for him no defects at all. Notice may be by record, by possession, or it may be given directly to the person sought to be charged with it, either by writing or verbally. In the case before us, at the time of the Orphans' Court sale, the possession was in the heirs at law of Joseph Hutchinson, and there was no proof of actual notice to the purchaser that Andrew Banks held a life estate in the premises sold. Was the record of the deed of 14th August, 1832, notice of the estate of Banks? We think not. There is nothing in the description to bring home notice to the purchaser of the identity of the land. Neither township, county, nor state is given for its locality; nor is the number of the tract, or the amount of acres mentioned. No boundaries, courses, or distances referred to: all that is required to fill the description is to find one servisberry, three white oaks, a limestone quarry, with the trees marked in some manner. One about to purchase at a judicial sale, finding such a deed upon record, might safely assume that it did not apply to land of which the grantor died seised.

We are of opinion that the description in this deed was too vague and indefinite, either to bring home notice to the purchaser, or to put him upon inquiry; and that for this reason the Common Pleas was right in directing a verdict for the defendant.

Judgment affirmed.