# Burton's Appeal.

1. Where an owner of stock leaves his certificates with a broker, accompanied with a blank power of attorney to sell and transfer the same, and the broker pledges them for his own debt to one without any knowledge of the fraud of the broker, the owner of the stock is estopped from setting up his ownership against such innocent pledgee, who has advanced money thereon.

2. Where one by his own act has armed another with power to act for him, and this agent or attorney deals with innocent third parties who, without notice or other intervening equity advance money upon the faith of the evidences of title in the possession of the agent or attorney, the owner takes every risk, and is bound by the act of the person whom he thus sees fit to hold out to the world as his agent or attorney.

3. In an equity proceeding the examiner to take testimony had filed his report and a master was appointed. An application was made to the court to re-open the evidence, on the ground that two of the witnesses had made a mistake in their testimony before the examiner. *Held,* that where it clearly appeared the witnesses had made a mistake, the application, in the discretion of the court, could be granted, but such applications are not to be favored, and great care must be exercised in order to prevent abuse.

February 18th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Appeal from the Court of Common Pleas, No. 3, of *Philadelphia county :* Of January Term 1879, No. 19. In Equity.

Appeal of Elwood Burton from a decree of the court in a certain proceeding in equity.

The bill was filed by appellant against Richard Peterson and Emma L. Peterson, executors of Pearson S. Peterson, deceased, and the Girard Life Insurance, Annuity and Trust Company and the Lehigh Valley Railroad Company, praying for a re-transfer of one hundred shares of stock of the Lehigh Valley Railroad Company, which had stood in the name of the complainant, but had

been transferred into the name of the Girard Life Insurance Company.

Testimony was taken before an examiner, and after he had filed his report, a master was appointed to report the facts and the law. It subsequently appearing that a material mistake had been made in the testimony taken before the examiner, application was made to the court to allow the master to take additional testimony, which the court granted.

From the facts, as reported by the master, it appeared that the plaintiff, who lived in Bucks county, was the owner of one hundred shares of Lehigh Valley Railroad Company stock. On February 17th 1876, he left these certificates with P. S. Peterson, a broker in Philadelphia, with instructions to sell the stock if it reached $64\frac{1}{2}$ per share. Burton at the same time left with Peterson a blank power of attorney to sell, assign or transfer the stock, such as is usually given to brokers. The stock never reached the price fixed for its sale, and having declined, and there being no prospect of a sale, Burton called several times during the summer of 1876, and requested that the certificates and the blank power of attorney should be returned to him. He was informed on these several occasions that the stock was in the firm-box in the vault of the Fidelity Trust Company. It appeared, however, that Peterson had, on February 18th 1876, pledged the stock to the Girard Life Insurance Company for an advance made to him individually. The stock was still in possession of said Girard Insurance Company when Peterson died insolvent on January 8th 1877. The evidence was conflicting as to whether the stock was pledged by Peterson for a personal advance, or as collateral security for an antecedent debt.

The master found, as a fact, that it was pledged for a present advance, and was of the opinion " that P. S. Peterson & Co., by the delivery to them of the certificates of the Lehigh Valley Railroad Company stock, accompanied by the blank bills of sale and power of attorney, acquired an apparent ownership, which justified the Girard Life Insurance, Annuity and Trust Company in dealing with them as the actual owners; that there was nothing to put the officers of the company upon inquiry, and that the company was an innocent purchaser for value, and is entitled to the protection of the court." The master was, therefore, of the opinion that the bill should be dismissed as against the Girard Life Insurance, Annuity and Trust Company, with costs.

He was also of the opinion " that a decree should be entered against the defendants, Richard Peterson and Emma L. Peterson, executors of Pearson S. Peterson, deceased, for the sum of $6300, with interest from February 18th 1876, to be paid, together with the costs of this suit, to the plaintiff, Elwood Burton, out of the

assets which now are, or may hereafter come into their hands, belonging to the estate of Pearson S. Peterson, deceased."

Exceptions were filed to the master's report, which the court dismissed, Ludlow, P. J., in an opinion saying :

" The exceptions filed to the report of the master in this case may be condensed into a few points :

" 1. It is alleged that the court ought not to have referred the case back to the master for additional testimony, after the report of the examiner had been filed, and when the case was prepared for argument.

" 2. It is argued that the master has erred in finding the facts as reported to us, and that he admitted or rejected improperly certain evidence produced.

" 3. That in point of law upon the facts found, the master has erred.

" The first point made is directed to the action of the court, and the two last to the action of the master.

" When this case was first before us, a motion was made, and supported by affidavit, which at that time proved to us that a mistake had been made in the testimony taken before the examiner by two of the witnesses examined. The case seemed to be clear to us, and we directed the witnesses to appear before the master and correct the mistake. This they subsequently did, and because it affects the plaintiff's case objection is made to the course pursued. That an application like the present one ought not to be favored is admitted, but that the power to refer exists and can at any time be exercised by the court cannot be denied. That any one may be satisfied of the entire correctness of the principle, let him examine the standard authorities, and we think he will be satisfied. The general rule undoubtedly is, that the testimony once closed shall not be again opened; but the exception is as well defined as the rule itself, and has been frequently acted upon by courts of equity. In Denton v. Jackson, 1 Johns. Ch. 525, Chancellor Kent after publication passed, and cause set down for hearing, permitted a witness to be examined, because the examiner had made a mistake in taking down his testimony. The chancellor said 'Applications of this kind must rest in discretion, and great caution is requisite to prevent abuse.'

" Adams, in his Treatise upon Equity 372, declares that 'the rule excluding evidence after publication passed is subject to the discretion of the court.' See also 2 Danl. Ch. Pr. 1150. In Nice v. Pruden, 8 Phila. R. 350, Allison, P. J., while affirming the general rule, as distinctly states the exception to it. In the case before us it appeared that two reputable witnesses made a clear mistake in a portion of their testimony. It was evident either that the witnesses had not understood an important question which had been propounded, or that the examiner had made a mis-

[Burton's Appeal.]

take in recording the evidence. We have no doubt now that the examiner did not fall into error, and we are as clear that, unless both the witnesses have sworn falsely, they could not have understood the question or questions propounded, and had the case gone on to a hearing, when first before this court, we would have been called upon to decide it upon testimony evidently untrue.

" The exercise of our discretion, on behalf of defendants, in this instance, was an act of wisdom; provided, always, we are expected to determine causes according to the facts as they really are, and not according to statements accidentally made; and if we are to believe the witnesses, absolutely untrue.

Passing now to the next point in this case, we notice the exceptions which challenge the accuracy of the findings of the master upon questions of fact, and his determination of questions of evidence. An attentive examination of all the evidence upon the points thus presented, satisfies us that he was substantially right, and that he has condensed as clear a statement of the facts as probably could have been made in the case. We also fail to see that he erred in his disposition of the questions of evidence presented, and, whatever criticism may be made upon the admission or rejection of this testimony, his rulings in no way involve substantial injustice to the plaintiff's case.

" The decisions of the master upon questions of law remain to be noticed.

" The master having found, as a fact, that the Girard Life Insurance, Annuity and Trust Company did not take the stock in question for an antecedent debt, the law is clear that the company had the right to hold the collaterals as security for the debt.

" In April, 1876, the stock first came into possession of the Girard Life Insurance, Annuity and Trust Company. Then a loan of $18,000 was made upon it with other securities. It is true that the debt was reduced to $15,000, and that, on the 13th of June 1876, new due-bills were taken, and then again on the 18th of December 1876; but the collaterals were never surrendered, and were held for what was in substance a new loan, and this new loan was never repaid until the company protected itself by a sale of the collateral security.

" Unless some equity intervenes, or some rule of law prevents, the company is entitled to protection.

" It is contended that an equity does protect the plaintiff, for it is argued that the Girard Life Insurance, Annuity and Trust Company, or its officers, had notice prior to February 28th 1877, when plaintiff called at the office, that the stock did not belong to P. S. Peterson & Co.; that they were not the real owners.

" If the testimony established any such proposition, then the case must be decided in favor of the plaintiff. Upon that point the law is so clear that there can be no difference of opinion.

[Burton's Appeal.]

"Apart from the fact that the certificate of stock was accompanied by a blank power of attorney to transfer, we see nothing in the case which inclines us to believe that the Girard Life Insurance, Annuity and Trust Company, or any of its officers, had the slightest knowledge that the stock in question belonged to any one except the firm of P. S. Peterson & Co. If the circumstances developed in this case are to be taken as evidence of constructive notice, then the business of loaning money upon such collaterals must be promptly ended, for it is fair to remark that ninety-nine out of every one hundred transactions of this nature are conducted upon precisely similar principles.

"It is possible, however, that the power of attorney being in blank, although irrevocable, may present a case which required additional care upon the part of the Girard Life Insurance, Annuity and Trust Company, for it may be the cause in which no legal title passed to the company, and one in which the power of attorney and assignment being in *blank* was of itself legal constructive notice that the stock did not belong to the firm of P. S. Peterson & Co.

"This is the great question in this cause, and is, moreover, a new question in Pennsylvania; it has not been directly decided, unless indeed very recently, and without our knowledge.

"The master has very ably discussed the whole subject, and referred to the leading cases in sister states, in which the question has been raised and decided, with such copious extracts from the opinions of the courts, as to render any extended opinion of ours now unnecessary.

"It will be enough for us to add the following:

"1. It is not pretended that a certificate of stock, accompanied by a blank irrevocable power of attorney to transfer is, *per se*, negotiable; indeed, Biddle *v.* Bayard, 1 Harris 152, looks the other way; at best it is but a *quasi* negotiable instrument.

"2. It is not pretended here that the plaintiff, by accident or misfortune, parted with or lost his certificate; the fact is admitted that in no such way did he suffer any injury; had it been otherwise, then, indeed, the vigorous language of GIBSON, C. J., in Biddle *v.* Bayard, *supra*, would apply. 'The rule * * * would compel a man to lock his stable door, for the owner of paper had no more reason to think he was going to lose it than a man has to think his horse is going to be stolen.'

"3. The principle upon which these transactions have been, and we think ought to be, established is this: that when the owner of stock, in the ordinary course of business, and in the method common to all mercantile communities, by his own act has armed another, his agent or attorney, with power to act for him, and when this agent or attorney deals with innocent third parties, who, without notice or other intervening equity, advance money upon

[Burton's Appeal.]

the faith of the evidences of title in the possession of the attorney or agent, the owner takes every risk, and is bound by the act of the person whom he sees fit to hold out to the world as his attorney or agent. This case must be carefully distinguished from the class of cases to which Denny v. Lyon, 2 Wright 98, belongs. There the blank had been filled up, and the court say the power was exhausted. To permit a name to be erased and another inserted would open the door to forgery and other vicious practices which the court very properly condemns. The case stands upon entirely different principles, and to extend it to include this cause would be to revolutionize the well-settled usages of financial communities, which usages are adopted because of the necessities of business and to meet the wants of an advanced commercial age. The exceptions are dismissed and the report confirmed.

From this decree this appeal was taken.

*J. A. Burton*, for appellant.—It is a rule that a witness having been once sworn, examined and cross-examined and his testimony closed, he cannot be called to alter, explain or contradict his previous testimony: 2 Danl. Ch. Pr. 970, 1180, 1181; Bright. Eq. 560; Adams's Eq. 372; Neice v. Pruden, 8 Phila. 35; Earl v. Pickin, 1 R. & M. 547.

The law in this state is, that as against the true owner the purchaser for value, of a certificate of stock, with the blank assignment and power, from a finder thereof, acquires no title, because such papers are not negotiable: Biddle v. Bayard, 1 Harris 150.

That they are not negotiable is the law of England, as well as this and other states: Sewell v. Water Co., 4 Allen 282; Shaw v. Spencer, Withrows Am. Corp. Cas. 631–635; Crouch v. Credit Foucier, 8 Q. B. 874.

If not negotiable they are liable to all the equities between the parties. The purchaser acquires only an equitable right or lien, subject to all prior equities: Stebbins v. Phœnix Ins. Co., 3 Paige 356.

But the court and master invoke another principle, to wit, "that when one of two innocent persons must suffer from the acts of a third, the one that enables the third party to do the wrong must suffer the loss." This case is not within the principle. The appellees are not innocent parties. The assignment was not filled in with the name of the transferee. The title was incomplete until that was done and that was notice that such transaction was *in fieri*, and it showed further than this, that Peterson was not the person in whose name the stocks stood in the books of the company, and from the face of the papers not the owner, and therefore had no right to pledge for his own debt. It might be said the power gave him a right to transfer to a purchaser; the appellees were not purchasers  This, it was held in the case of Tayler v. Great India

Railroad Co. 4, De Gex *v.* Jones 558, put the parties dealing upon inquiry.

*John J. Ridgway*, for appellee.—The law is well settled that, as between two innocent parties, the one must suffer whose action has brought about the loss, and admitting the complainant to be an innocent party, although it is difficult to so speak of such extraordinary negligence, it cannot be pretended that the unfortunate result has not followed from his conduct in the matter. Where one of two innocent parties must suffer by the fraud or negligence of a third, whichever of the two accredited him ought to bear the loss: Fitzherbert *v.* Mather, 1 T. R. 12; Mundorff *v.* Wickersham, 13 P. F. Smith 87; Pennsylvania Railroad Co.'s Appeal, 5 Norris 80.

In addition to the authorities cited by the court below, to show its discretion to order a re-examination of the witnesses to correct a mistake, it is desired to add the following, and call special attention to the fact that the objection is wholly technical, for it can not be denied that the correction made is in accordance with the uncontradicted facts of the case: Trustees of Kingston *v.* Tappen, 1 Johns. Ch. 368; Kirk *v.* Kirk, 13 Vesey 286; Daniels's Ch. Pr. 953; Adams's Equity *371.

The judgment of the Supreme Court was entered March 8th 1880,

Per Curiam.—The learned master has found the facts from the evidence before him, and he was the best judge of the credibility of the witnesses. The court below have confirmed the report of the master. The whole question was upon the credit to be given to the witnesses in the correction they made of the testimony which they gave at first. We have no doubt that the court below, in the exercise of a sound discretion, could open the evidence and allow witnesses to correct what they alleged to be mistakes. Looking at the probabilities of the case, it seems to us that they all tend to confirm the finding of the master and the court. Nothing but very clear error would justify us in setting aside such finding.

Decree affirmed and appeal dismissed at the costs of the appellant.