## THOMPSON *v.* SELCER.

1. If an owner of corporate stock transferred the certificate thereof to another under an agreement that the latter should negotiate, use, or hypothecate the stock and use the proceeds for the benefit of the transferor in the advancement of an enterprise in which both were interested, and if such stock was levied on under an execution against the transferee and sold at sheriff's sale to a purchaser bona fide, for value, and without notice of any equity in the transferor, the purchaser obtained a title superior to the claim of the transferor growing out of the agreement as to the application of the proceeds.

2. Allegations to the effect that a certificate of stock included twenty-six shares, that the stock was easily worth "intrinsically" from $80 to $90, and possibly $100, per share, that a levy and sale of "some three shares of said stock should have realized the amount of the judgment," and that the twenty-six shares sold for $21.95, but which did not show that the stock had any market value, or what it was, or that it was not sold one share at a time, as provided by law, were insufficient to show a case of excessive levy, so as to withstand a demurrer.

DECEMBER 16, 1914.

Equitable petition. Before Judge Bell. Fulton superior court. October 23, 1913.

W. M. Selcer brought a petition against the Trust Company of the South, Charles E. Thompson, Frederick Kauffmann, Paula Kauffmann, and the sheriff of Fulton county, alleging in substance as follows: On or about June 20, 1913, the plaintiff, being then the owner and holder of twenty-six shares of the stock of the Trust Company of the South, indorsed in blank his certificate representing such shares, and delivered it to Frederick Kauffmann, to be negotiated and used by the latter for the benefit of the plaintiff, thus constituting Kauffmann a naked trustee for the plaintiff, to enable him, for the plaintiff's benefit, to negotiate, use, and hypothecate the stock and raise money thereon, under an agreement between them that such money was to be employed for the benefit and on account of the plaintiff, in a certain enterprise in which the two were about to engage; or, rather, the proceeds of the shares of stock were to be contributed by the plaintiff to the enterprise. Kauffmann did not negotiate the stock or make a loan secured by it for the benefit of the plaintiff. On or about July 7, 1913, an execution against Kauffmann in favor of one Noble, for $209.58 principal, based on a judgment rendered on or about March 5 previous, was levied by the sheriff upon the stock as that of Kauffmann. Plaintiff is informed that prior to the levy Kauffmann transferred

the stock to his wife, Paula Kauffmann, without consideration, and with a view to protecting the plaintiff, Selcer, which was done without his knowledge or consent. The sheriff advertised and sold the stock to the defendant, Thompson, for the sum of $21.95, and executed to him a bill of sale. Thompson demanded that the corporation transfer the stock to him upon its books, and issue a certificate accordingly, which was refused. He thereupon filed his petition for a mandamus to compel this to be done. Aside from the allegations above shown, it was averred, that the levy was excessive; that "said stock is easily worth, intrinsically, from eighty ($80) to ninety ($90) dollars per share, and possibly one hundred dollars ($100) per share; that, even if the said Frederick Kauffmann had been the true owner of said stock, the levy upon and sale of some three (3) shares of said stock should have realized the amount of the judgment in favor of the said" plaintiff in execution. The prayer was, for an injunction to restrain the proceeding by mandamus; that the levy and sale be declared void, and the title be decreed to be in the plaintiff; that the corporation be enjoined from transferring the stock to the purchaser at the sheriff's sale, and from issuing any certificate of stock to him; and for process and general relief. Thompson interposed a demurrer to the petition, which was overruled, and he excepted.

*Frank L. Neufville,* for plaintiff in error. *Anderson & Anderson, P. B. D'Orr,* and *Hewlett, Dennis & Whilman,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. Where an owner of a number of shares of stock in a corporation indorsed the certificate thereof in blank and delivered it to another person for the purpose of being negotiated, with an agreement that the proceeds should be used for the benefit of the original owner, this passed the legal title to the stock into such transferee. A transfer of a stock certificate may be made without naming the transferee; and, except as against the claims of the corporation, the transfer of stock does not require a transfer on the books of the company. Cook on Stock and Stockholders (3d ed.), § 380; Civil Code (1910), § 2219. Thus, according to the plaintiff's allegations, he placed the title to the stock in Kauffmann, the transferee, with power in the latter to negotiate it. A sale regularly made by virtue of judicial process issuing from a court of competent jurisdiction conveys the title to the property sold, as effectually as if the sale

were made by the person against whom the process issued. Civil Code (1910), § 6051. Under the allegations of the petition, when the plaintiff indorsed his certificate of stock and delivered it to Kauffmann for the purpose of negotiation, if Kauffmann had himself sold it to a purchaser bona fide, for value, and without notice, the sale would have been good. There is no allegation that Thompson was not such a purchaser, and, under the code section last cited, he acquired the title as completely as if Kauffmann had transferred it to him. *Fahn* v. *Bleckley,* 55 *Ga.* 81; *Rosser* v. *Darden,* 82 *Ga.* 219 (7 S. E. 919, 14 Am. St. R. 152); Young *v.* Vough, 23 N. J. Eq. 325; Burton's Appeal, 93 Pa. 214. The doctrine of caveat emptor applies to judicial sales. If Kauffmann had had no title to the stock, the purchaser at the sheriff's sale would have acquired none. But in this State the doctrine of an innocent purchaser without notice is recognized, at least to some extent, as to sheriff's sales. By the Civil Code (1910), § 6059, it is declared that an innocent purchaser is bound only to see that the officer has competent authority to sell, and that he is apparently proceeding to sell under the prescribed form. He is not required to see that the officer has complied fully with all those regulations prescribed in such cases. Such irregularities create questions and liabilities between the officer and parties interested in the sale. Further, the principle that one who by his acts or omissions has induced another to change his circumstances, without fault on the part of the latter, is estopped, has been held to apply to judicial sales. *Osborn* v. *Elder,* 65 *Ga.* 360; *Whittington* v. *Wright,* 9 *Ga.* 23 (4); *Allen* v. *Brown,* 83 *Ga.* 161 (9 S. E. 674); *Morris* v. *Rogers,* 104 *Ga.* 705 (2), 708 (30 S. E. 937). In each of these cases there was some act done by the owner of the property, which was relied on. In the present case the facts are not so strong; but those decisions are cited to show that the doctrine of caveat emptor does not mean that the purchaser at a sheriff's sale, who buys in good faith and without notice of secret claims or equities, will never be protected against them. See in this connection Banks *v.* Ammon, 27 Pa. 172.

The plaintiff having confessedly conveyed the legal title to the stock to Kauffmann, with the intention that the latter could dispose of it as the owner, but with an agreement as to the use of the proceeds, and Thompson having purchased the stock at a sheriff's sale under an execution against Kauffmann, bona fide, for value, and

without notice of any secret equity or agreement between the parties, so far as appears from the record, his title was superior to the equity of the plaintiff growing out of any such agreement with Kauffmann. The effort of Kauffmann to avoid the levy by transferring the certificate of stock to his wife can not help Selcer.

2. It was contended that the levy was excessive, because it was alleged that twenty-six shares of stock were levied on and sold, and that three shares would have been sufficient to have paid the debt. The statute requires the sheriff to sell only one share at a time. Civil Code (1910), § 6036. Presumptively he complied with the law. There is no denial that he did so. If he sold one share of the stock at a time, and the entire twenty-six shares only brought in the aggregate $21.95, while the execution was for much more than that amount, the sale can not be set aside on the ground that the levy was excessive.  *VanDyke* v. *Marlin*, 53 *Ga.* 221; *Saffold* v. *Foster*, 75 *Ga.* 233. Moreover, the allegations in regard to the value of the stock are meager. It is alleged that it was easily worth "intrinsically" from $80 to $90 per share, and possibly $100 per share, and that, "even if the said Frederick Kauffmann had been the true owner of said stock, a levy upon and sale of three (3) shares of said stock should have realized the amount of the judgment in favor of the" plaintiff in execution. There is no allegation that the stock had any market value, or what it was. What the plaintiff thinks his stock was "intrinsically" or "possibly" worth furnishes no reason for setting aside a sheriff's sale. On this branch of the case, the allegations were fatally defective both as to showing what was the market value of the stock, if it had any, and also in failing to show that the sheriff did not comply with his duty and sell the stock as provided by law.

*Judgment reversed. All the Justices concur, except Fish, C. J.; absent.*