## SCOTT et al. v. FLINT RIVER PECAN COMPANY et al.

1. "The remedy of mandamus does not lie to compel the transfer of stock in an incorporated company, except in the case of a judicial sale thereof."
2. The transfer and assignment of stock in a corporation, either by absolute sale or by way of pledge as security for a debt, passes to the vendee or pledgee the title to such stock. Where one takes shares of stock in a corporation in this State as a pledge or security for debt, with an assignment of the stock to the pledgee in blank, who fills in the blank with the name of the pledgee, and the agents of the company refuse to recognize the rights of the pledgee, or to allow a transfer of the stock on the books of the company, the pledgee may bring an equitable proceeding against the pledgor and the company to restrain the former from interfering with the rights of the pledgee, in good faith and under reasonable regulations, in examining the books of the company, and to compel the company to make the transfer of the shares of stock and to recognize the pledgee as a shareholder.
3. A decree requiring a corporation to make a transfer of stock on the books of the corporation can not be rendered at an interlocutory hearing; but under the pleadings and evidence in this case the stockholders had the right to examine the books of the corporation under reasonable regulations, and the evidence showed that they were denied this right, and the injunction on this ground should have been granted.
4. The trial judge did not err in allowing the intervention filed in this case.

No. 4144. JANUARY 14, 1925. ADHERED TO ON REHEARING, FEBRUARY 20, 1925.

Petition for injunction. Before Judge Custer. Dougherty superior court. December 1, 1923.

Townsend Scott and Arnold Elzey Waters, as trustees, brought an equitable petition against Flint River Pecan Company, Dermot Shemwell as president of the company, and H. H. Hedrick as vice-president, and alleged in substance the following: Plaintiffs, as trustees, own in their representative capacity 1200 shares of the capital stock of the Flint River Pecan Co., which stock was conveyed to plaintiffs under and by virtue of a certain trust agreement, copy of which is attached to the petition. Plaintiffs as stockholders have made demand on the defendant and its officers to transfer said stock on the books of the company, and to place the same in the name of plaintiffs as trustees. Prior to this demand Dermot Shemwell announced that he would not transfer the stock, and when demand was made he declined to consider the transfer of the stock to the trustees. Both the company and the officers thereof have declined to permit plaintiffs to exercise their right as stockholders to investigate or inspect the books of the Flint River Pecan Co. The notes secured by the stock in accordance with the trust agreement have all become due and collectible, by reason of the stipulations contained therein, wherein Foy & Shemwell, as partners and as individuals, agreed not to mortgage or put a loan on the properties owned by the Flint River Pecan Co., but contrary to the agreement did mortgage the property in the sum of $200,000. By reason of the ownership of said stock plaintiffs are entitled to have it transferred on the books of the company, or certificates to issue in their name in lieu of the certificates held by them; they are entitled to vote in all matters concerning the stockholders which according to law they have a right to vote on, and to investigate the books of the company, and to exercise all other rights incident to the right of a stockholder. The prayers of the petition (after amendment striking one of the prayers) are, that the Flint River Pecan Co., Dermot Shemwell, president, and H. H. Hedrick, vice-president, both in their official and individual capacities, be enjoined from interfering with plaintiffs in the exercise of their rights as stockholders, and from interfering with plaintiffs in investigating the books and affairs of the company and in exercising any other right within the purview of the rights of a stockholder; that the defendants, both in their official and individual capacity, be compelled to issue a certificate to plaintiffs in lieu of the present certificates held by them in their names as the holders thereof. There is also a prayer for general relief and for process.

The defendants made in substance the following answer: Townsend Scott and Son is a partnership, the members of which live in Baltimore, Maryland; the business of the partnership is a general investment and banking business. The Georgia-Alabama Power Co. is a corporation having several hydro-electric power plants in Southwest Georgia and in Alabama. Georgia-Alabama Power Co. was built through the efforts of Foy & Shemwell, and financed by them and Townsend Scott & Son. In 1921 Townsend Scott & Son became the owners of practically all of the voting stock of Georgia-Alabama Power Co. Foy & Shemwell and other citizens of southwest Georgia continued to own large holdings of preferred stock of Georgia-Alabama Power Co. Townsend Scott & Son have so used their control over Georgia-Alabama Power Co. as to cause that company to pay to them numerous and improper charges for its refinancing, and to issue to them bonds of that company in the sum of several hundred thousand dollars in lieu of the stock which Townsend Scott & Son had agreed to buy from Georgia-Alabama Power Co. These acts were fraudulent and were for the purpose of making a large profit for Townsend Scott & Son through an improper use of their control of Georgia-Alabama Power Co. Great injury was worked thereby, and Foy & Shemwell, and the other preferred stockholders filed their equitable petition against Townsend Scott & Son and the Georgia-Alabama Power Co., alleging that these acts were fraudulent. Townsend Scott & Son caused the Georgia-Alabama Power Co. to present to Foy & Shemwell a claim for $183,000, and demanded payment of that sum. The claim is wholly unfounded, and Foy & Shemwell claims that Georgia-Alabama Power Co. is indebted to it, and has filed suit to recover the amount so claimed to be due. Both these suits have been removed from the superior court of Dougherty county to the United States district court for the southern district of Georgia; and motion to remand the suit has been made, and is now pending. Townsend Scott & Son then caused suit to be filed by Georgia-Alabama Power Co. against the Citizens First National Bank of Albany, Georgia, with which Foy & Shemwell are affiliated, seeking to recover of the bank a large amount of money upon the claim that the money of Georgia-Alabama Power Co. was improperly paid to it, when the money has been paid for the use and benefit of Georgia-Alabama Power Co., with the knowledge and consent of Townsend Scott & Son, and the transactions were perfectly fair

and proper. The suit was wholly without foundation, and was filed for the purpose of harrassing Foy & Shemwell and to cause them to abandon their suit, and for the purpose of injuring the bank because it was affiliated with Foy & Shemwell. The purpose of the suit was to create false impressions as to the bank, and it was brought out of a malicious purpose to undertake to force Foy & Shemwell to abandon their efforts to protect the preferred stockholders of Georgia-Alabama Power Co. against the plaintiffs' illegal and fraudulent acts. Townsend Scott & Son then caused Arnold Elzey Waters and Townsend Scott, who claim to be acting under a certain indenture, to declare due certain indebtedness of Foy & Shemwell, growing out of the allegations to the effect that Foy & Shemwell had agreed in a certain contract that the indebtedness therein mentioned might be declared to be due if the Flint River Pecan Co. issued a mortgage upon its property, when the fact is that the mortgage was issued with the knowledge and consent of Townsend Scott & Son and of the trustees, and the former participated in the funds of the mortgage, the details of which are set out in the answer. Every detail of the transaction was known to Townsend Scott & Son for four or five months prior to the filing of the stockholders' suit, and fully acquiesced in by them during that time and until after the stockholders' suit was filed. Townsend Scott & Son were then holders of all the notes secured by the trust instrument, or the notes were held for their benefit and by their agents and business associates. Townsend Scott and Arnold Elzey Waters are members of the firm of Townsend Scott & Son, and were caused by that firm to declare due, prior to maturity and by acceleration, the notes secured by the trust instrument, and then place the notes in the hands of Wm. W. Moss, of Norfolk, Virginia, who, acting for Townsend Scott & Son, and wholly in their behalf, caused Moss to file suit against Foy & Shemwell on the notes. Thereupon Townsend Scott & Son, acting through their counsel, who are the same that represent Moss and Georgia-Alabama Power Co., made demand on Foy & Shemwell that a bond be given by them to protect Moss in any judgment that he might recover. Foy & Shemwell offered to give this bond if Townsend Scott & Son would themselves come into the jurisdiction of the courts of this State and submit themselves thereto, but they refused to do so. Thereupon Townsend Scott & Son, acting through Moss, caused

garnishment to be issued and served upon various persons who were supposed to be debtors of Foy & Shemwell. This act was done for the purpose of harassing and annoying Foy & Shemwell and injuring their credit and forcing them to withdraw from the action which they have instituted for the protection of the preferred stockholders of Georgia-Alabama Power Co. Townsend Scott & Son then caused Townsend Scott and Arnold Elzey Waters to file a petition for mandamus against the Flint River Pecan Co., undertaking to examine the books and corporate records of the Flint River Pecan Co., etc. The action was a part of the general scheme on the part of Townsend Scott & Son to break down the credit of Foy & Shemwell and every enterprise with which they are connected. Flint River Pecan Co. filed an answer to this petition for mandamus, and on the same day Scott and Waters filed the present equitable petition.

There were other averments of similar conduct as set out above, which need not be stated here. The defendants in conclusion averred that adequate relief can not be granted in this case without additional parties, and that it is necessary to make Foy & Shemwell, a partnership, and the members thereof parties hereto. That partnership is composed of J. E. Foy Sr., J. E. Foy Jr., Dermot Shemwell, J. W. Parker, H. H. Hedrick, W. J. Vestal Jr. Foy & Shemwell Incorporated, to which a large part of the assets of Foy & Shemwell have been conveyed, should likewise be made a party defendant; and the partnership of Townsend Scott & Son and the members thereof should be held to be parties plaintiff in this case, on account of the facts herein alleged. It is prayed that it be held that the plaintiffs are not entitled to the relief sought.

Subsequently Foy & Shemwell, the partnership, and Foy & Shemwell Incorporated filed their petition for intervention, adopted the answer of the defendants as just set out, and alleged in addition that the trustees, officially and individually, and the firm of Townsend Scott & Son, and the individual members thereof have injured and damaged Foy & Shemwell in the sum of $100,000, on account of the malicious abuse of the powers contained in the instrument above described, on account of causing the actions to be instituted against Foy & Shemwell and on account of cost, time, and expense in defending against said acts of the trustees. They therefore pray: that they be allowed to file this intervention; that

Townsend Scott and Arnold Elzey Waters, as trustees and as individuals, and as members of the firm of Townsend Scott & Son, be made parties to this action; that the last-named persons be each and all of them restrained from filing further suits or actions against these intervenors or any of them, except in the causes already filed and described or referred to in this petition; that they be restrained from causing other persons to institute vexatious actions against these intervenors; that an injunction issue and injunction be made permanent, enjoining the persons from doing the acts referred to, and from instituting or causing to be instituted further vexatious actions against these intervenors; and that they be restrained from prosecuting or causing W. M. Moss to prosecute the aforementioned suit in the United States district court; that the pretended declaration of acceleration of the maturity of the notes of the said Foy & Shemwell by the trustees be declared null and void and be set aside; for judgment against Townsend Scott and Arnold Elzey Waters, individually and as trustees, and against Townsend Scott & Son, the partnership, and members thereof, in accordance with the allegations of the petition, and for general relief.  The plaintiffs objected to the petition for intervention asking for new parties to be made, which objections were overruled; and the intervention was allowed by the court.

The matter coming on to be heard on motion for an interlocutory injunction, the court denied an interlocutory injunction on the ground that the injunction prayed for was mandatory.  To the allowance of the intervention and the refusal of an injunction, exception was taken.

*Milner & Farkas,* for plaintiffs.

*Alston, Alston, Foster & Moise, Lippitt & Burt,* and *Pope & Bennet,* for defendants.

HILL, J.  1.  The judgment complained of in this case was rendered at an interlocutory hearing.  No demurrer was filed to the original petition, complaining that an equitable petition would not lie, and that the plaintiff had an adequate remedy by mandamus.  Indeed had there been such a demurrer it could not have been *expressly* ruled upon at the interlocutory hearing before the first term.  The trial judge, in refusing the injunction prayed for, put his decision upon the ground that the petition seeks mandatory relief.  This order of the court is excepted to, "because the same is contrary

43

to law and that the plaintiffs were not entitled to the relief sought as a matter of law." The relief sought was twofold: first, an injunction was prayed to prevent the defendants from interfering with the alleged right to examine the books of the company; and second, a decree requiring the company to make a transfer of the stock involved in the present case on the books of the company in the name of the plaintiffs. The question arises, first, whether the mandatory relief is forbidden by the statute as contained in our code and the decisions of our courts. Our attention has been called to certain decisions of this court which hold that in a case like the present mandamus will not lie, but that an equitable petition praying for injunction and incidentally for equitable relief is a proper remedy. Thus, in *Bank of the State of Georgia* v. *Harrison,* 66 *Ga.* 696, it was held that "Mandamus will not lie to compel the officers of a bank to transfer stock from a vendor to a purchaser, under a judicial sale; in that case the bank official becomes a public officer pro hac vice." Following the decision in the *Harrison* case was *Terrell* v. *Ga. R. &c. Co.,* 115 *Ga.* 104 (41 S. E. 262), where the *Harrison* case was cited with approval, and where this court held: "1. The remedy of mandamus does not lie to compel the transfer of stock in an incorporated company, except in the case of a judicial sale thereof. 2. An order granted by a judge of the superior court, appointing a trustee for a designated person and authorizing such trustee to sell described stock in a railroad company, in which that person has an interest, does not bring the case within the exception indicated above, and, as a consequence, afford a proper basis for a mandamus against the company compelling it to transfer the stock in question to the trustee, in order that he may make a sale of the same under and by virtue of such order of the court." In delivering the opinion of the court in the *Terrell* case, Fish, J., said: "Wm. H. Terrell was appointed trustee of Elise Beattie et al., by the judge of the superior court of Fulton County, who also granted an order authorizing the trustee to sell certain shares of the capital stock of the Georgia Railroad & Banking Company and to reinvest the proceeds of the sale in other property, to the use of the beneficiaries, under the direction of the court. Although the stock belonged to the beneficiaries, it stood upon the books of the corporation in the names of two other persons, the trustee holding certificates of stock which were in the names of such persons. The

trustee, for the purpose of selling the stock, in accordance with the order granted by the judge, demanded of the railroad company that it should transfer the stock on its books to himself as such trustee, and issue to him a certificate for the same. The company refused to comply with this demand; whereupon the trustee petitioned the judge of the superior court of Richmond County, in which county the principal office of the company was established, for the writ of mandamus to compel the company to comply with his demand above stated. The railroad company demurred to the petition, one of the grounds of demurrer being that mandamus was not the proper proceeding for the relief which the petitioner sought. The court sustained the demurrer and refused to grant the writ of mandamus, to which ruling the petitioner excepted." In affirming the judgment of the court below it was further said: "Whatever may be the rulings of other courts upon the subject, it is unquestionably true that, under the statutes of this State and the former adjudications of this court, his honor committed no error in the decision to which exception was taken. Our Civil Code contains the following provisions: 'All official duties should be faithfully fulfilled, and whenever, from any cause, a defect of legal justice would ensue from a failure or improper fulfillment, the writ of mandamus may issue to compel a due performance, if there be no other specific legal remedy for the legal rights' (§ 4867). 'Mandamus does not lie as a private remedy between individuals to enforce private rights, . . . ' (§ 4868). 'A private person may by mandamus enforce the performance by a corporation of a public duty as to matters in which he has a special interest' (§ 4869). Basing the decision upon these provisions of the code, this court, in *Bank* v. *Harrison,* 66 *Ga.* 696, held: 'Mandamus will not lie to compel the officers of a bank to transfer stock from a vendor to a purchaser, except under a judicial sale; in that case the bank official becomes a public officer pro hac vice.' The ruling in that case, we think, is conclusive of the case in hand. While a railroad company is a quasi-public corporation, and, as such, owes many important duties to the public, the duty of transferring its stock from one person to another is no more a duty which it owes to the public than it is the duty of the officers of a bank to transfer its stock from a vendor to a purchaser. In *Bailey* v. *Strohecker,* 38 *Ga.* 259 (95 Am. D. 388), it was held that where a sheriff sold capital

stock of a corporate company, and, in accordance with the statute, gave a certificate of purchase to the highest bidder, on presentation of such certificate to the proper officer of the corporation it was his duty to make the necessary transfer of the stock to the purchaser on the books of the company; that in such a case the proper officer of the corporation is, under the statute, pro hac vice, a public officer charged with the duty of making the transfer; and if he refuses to do so, mandamus is a proper remedy to compel performance of the duty. It will be seen, however, that the decision in that case was put upon the statute (now embodied in the Civil Code, § 4537), providing that 'certificates of purchase shall be granted by the officer selling [corporate stock] as prescribed in cases of executions, and on presentation of such certificates to the proper officer of such corporation, it shall be his duty to make such transfer on his books, if necessary, and afford the purchaser such evidence of title to the stock purchased as is usual and necessary to other stockholders.' Counsel for the plaintiff in error contend that 'the trustee here is not acting in his individual capacity, but is the agent of the law, and it is the duty of the court that appointed him to place him in possession, just as much as it was the duty of the sheriff in the 66 *Ga.* case, and the officers in the one case (of the corporation) are acting in a public capacity for the law just as much as in the other. In other words, the trustee in this case is a representative of the court and the law, and it is the duty of the law to put him in possession of what the court and the law has constituted him the custodian of,' and mandamus is the proper remedy. We can not agree to this contention. The decision in the 38 *Ga.*, as we have said, was based solely upon the statute. The facts of the present case do not bring it within the scope of the statute. If the trustee had sold the stock in accordance with the order authorizing him to do so, and the company had, upon demand of the purchaser, refused to transfer the stock to him and to give him a certificate therefor, such a case would be more nearly analogous to the case of *Bailey* v. *Strohecker,* supra, than the case made by the facts in this record; but we are not prepared to say that even in such hypothetical case the writ of mandamus would lie in behalf of the purchaser, against the company refusing to make the transfer."

In *Thornton* v. *Marlin,* 116 *Ga.* 115 (42 S. E. 348), it was held:

"Where one purchases shares of stock in a railroad company, and the vendor and the agents of the company refuse to recognize the validity of the sale or to allow a transfer on the books of the company, the purchaser may bring an equitable proceeding against the vendor and the company to restrain the former from disposing of the stock or interfering with its transfer, and to compel the company to make the transfer and receive the purchaser as a shareholder. There is in such a case no misjoinder of parties or of causes of action."

We are unable to distinguish the principle ruled in these cases from the one involved in the case at bar; and applying those principles here, we are forced to the conclusion that mandamus will not lie, but that an equitable petition seeking the relief will lie. We are of the' opinion that the relief sought in the present case is not of such mandatory character as is forbidden by the statute as contained in our code. Of course mandatory relief could not be granted at an interlocutory hearing. The relief sought is by those who hold stock in a corporation by assignment, to examine the books of the corporation at reasonable hours and under reasonable circumstances in order to protect their own interests.

2. The transfers on the certificates of stock attached to the amendment were, at the time of the trust agreement, signed by Foy & Shemwell, by H. H. Hedrick, in blank, and were delivered to the plaintiffs, who later filled in the blanks by inserting the words "Townsend Scott and Arnold Elzey Waters as trustees," and also the words "the proper officers of the Flint River Pecan Co." The following is a copy of one of the certificates of stock and the transfer of the same as appears in the record; the other certificates and transfers being in like form:

"Certificate for 400 Shares of the Capital Stock Flint River Pecan Company, Albany, Georgia.

"Issued to Foy & Shemwell, Date Mch. 22, 1922.

"Incorporated under the laws of Georgia.

"Number 142 ˙                                    Shares 400.

"Flint River Pecan Company, Albany, Ga.

"This certifies that Foy & Shemwell is the owner of four hundred shares of the capital stock of Flint River Pecan Company, transferable only on the books of this corporation in person or by attorney upon surrender of this certificate properly endorsed.

"In witness whereof, the said corporation has caused this certificate to be signed by its duly authorized officers and its corporate seal to be hereunto affixed, this 22nd day of March, A. D. 1922. Corporate Seal

"Flint River Pecan Company, Albany, Georgia.

"Attest: [Signed] Dermot Shemwell, President. Wm. L. Lee, Jr., Secretary.

"Shares $100.00 each.

"For value received, we hereby sell, assign, and transfer unto Townsend Scott and Arnold Elzey Waters, as trustees, four hundred (400) shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint the proper officers of Flint River Pecan Co. attorney to transfer the said stock on the books of the within named corporation with full power of substitution in the premises. Dated————————19--. [Signed] Foy & Shemwell, by H. H. Hedrick.

"In Presence of W. L. Crawford (Signed).

"Notice: The signature of this assignment must correspond with the name as written upon the face of the certificate, in every particular, without alteration or enlargement, or any change whatever."

The question, is, therefore, what is the effect of this transfer of the stock by Foy & Shemwell in blank to the plaintiffs in the court below? In this State it is not necessary that stock in a corporation be reissued on the books of the company, in order for the holder to be entitled to the rights of a stockholder. Civil Code (1910), § 2219. In *Thompson* v. *Selcer,* 142 *Ga.* 809 (83 S. E. 965), it was held: "If an owner of corporate stock transferred the certificate thereof to another under an agreement that the latter should negotiate, use, or hypothecate the stock and use the proceeds for the benefit of the transferor in the advancement of an enterprise in which both were interested, and if such stock was levied on under an execution against the transferee and sold at sheriff's sale to a purchaser bona fide, for value, and without notice of any equity in the transferor, the purchaser obtained a title superior to the claim of the transferor growing out of the agreement as to the application of the proceeds." In delivering the opinion of the court Mr. Justice Lumpkin said: "Where an owner of a number of shares of stock in a corporation endorsed the certificate

thereof in blank and delivered it to another person for the purpose of being negotiated, with an agreement that the proceeds should be used for the benefit of the original owner, this passed the title to the stock into such transferee. A transfer of a stock certificate may be made without naming the transferee; and, except as against the claims of the corporation, the transfer of stock does not require a transfer on the books of the company. Cook on Stock and Stockholders (3d ed.), § 380; Civil Code (1910), § 2219." A stockholder may exercise the right as such though the beneficial interest in such stock is in another. *Sylvania & Girard R. Co.* v. *Hoge*, 129 *Ga.* 734 (2) (59 S. E. 806).

In 7 R. C. L. 265, § 243, it is stated: "In America the courts have held that it is only necessary to a valid transfer, as between the parties, that the assignment and power of transfer should be in writing. The common practice of passing the title to stock by delivery of the certificate, with blank assignment and power, has been repeatedly shown and sanctioned in cases which have come before our courts. It has also been stated by repeated adjudications that, as between the parties, the delivery of the certificate with assignment and power passes the property in the shares, notwithstanding that by the terms of the charter or by-laws of the corporation the stock is declared to be transferable only on its books." The same author (p. 274, § 252) says: "The transfer and assignment of stock in a corporation, either by absolute sale or by way of pledge as security for a debt, passes to the vendee or pledgee the title thereto." And see, to the same effect, Parker *v*. Bethel Hotel Co., 31 L. R. A. 706, 713. In 7 R. C. L. 281, § 258, the same author declares that "There can be no doubt but that a pledgee of stock has a right to cause a proper entry of the transaction between himself and his pledgor to be entered upon the books of the corporation for his protection, although the contract may be silent on the subject. A pledgee of corporate stock has such an interest therein as entitles him to be heard in a court of equity concerning the preservation and protection of the assets and property of the corporation. His rights in this respect would seem to be essentially the same as those of the owner of stock, for a loss of corporate assets must result in a depreciation in the value of the stock and a consequent impairment of his security." In 2 Cook on Corp. (7th ed.) 1279, § 466, the author says: "Where certificates

of stock endorsed in blank are delivered to a person as pledgee as collateral security for a debt, or for any other purpose, the pledgee has a right to fill in the blanks and have the stock registered in his own name on the corporate books."

In *Guarantee Co.* v. *East Rome Town' Co.*, 96 *Ga.* 511' (23 S. E. 503, 51 Am. St. R. 150), it was held: "Where stock of a corporate company is pledged by the owner as collateral security for the payment of a debt, the pledgee is, as a general rule, entitled to collect- and receive the dividends thereof, unless this right is reserved by the pledgor at the time the pledge is made." In *Hardman* v. *Barrow*, 147 *Ga.* 617 (95 S. E. 209), it was held: "Where shares of stock were unqualifiedly assigned in writing, with express power to have them transferred on the books of the corporation, and the assignee received the certificates of stock as collateral security for a negotiable promissory note made to him by the assignor, the former or his assigns could surrender the certificates to the corporation, and receive a certificate of the same character for an equal number of shares in his own name, to be held as collateral security for the debt, and, while so holding, could vote the stock at corporate elections held under the by-laws of the corporation, which provided that no person should have the right' to vote stock except those in whose names the stock stood on the books of the company. 22 Am. & Eng. Enc. of Law, 907; Jones, Col. Sec. (3d ed.) § 441; Colebrooke, Col. Sec. 493; 10 Cyc. 332."

The petition in the present case comes within the requirements of *Winter* v. *So. Securities Co.*, 155 *Ga.* 590 (118 S. E. 214), where this court held: "A bona fide stockholder has the legal right to inspect the books and records of the company, where the examination is asked for in good faith for a specific and honest purpose, and not to gratify curiosity, or for speculating or for vexatious purposes; and provided further that the purpose of the stockholder desiring to make the examination is germane to his interest as a stockholder, proper and lawful in character, and not inimical to the interests of the corporation itself, and the inspection is made during reasonable business hours. 14 C. J. 855; 7 R. C. L. 322, § 298 et seq.; Cook on Corporations (7th ed.), § 511; Thompson on Corp. (2d ed.) § 4515."

From the foregoing facts and authorities we reach the conclusion that the title to the stock is in the pledgee; and that being so,

the owner of the title would have the right to investigate the books of the company in order to ascertain the condition of the company, and whether its assets are being properly protected.

3. As to the relief sought, viz., a decree requiring the corporation to make a transfer of the stock on the books of the corporation, that was not a subject-matter of relief at the interlocutory hearing, and the court did not err in refusing the injunction for this reason. But inasmuch as the stockholders have the right to examine the books of the corporation under reasonable regulations, and the evidence showed that they were denied this right, the injunction for this reason should have been granted.

*Judgment reversed. All the Justices concur.*

### ON MOTION FOR REHEARING.

1. The plaintiffs in error ask for a rehearing, stating that they have no objection to the intervention asking that parties be made to the litigation, but that they do object to the order allowing the parties to become parties defendant for the purpose of asking for damages in the sum of $100,000. The ruling made on the allowance of the intervention is not susceptible of that construction. The judgment of the trial court, of which the bill of exceptions complains, did nothing more than to allow the intervenors to be made parties; and in no sense did the judge deal with the demurrer which attacked that part of the intervention asking for damages, or for any relief not germane to the original pleadings. That is true because the appearance term of the suit had not arrived, and the court could not and did not deal with the demurrer as such, and did not undertake to do so; and therefore this court did not deal with the demurrer, and that question is still open for the trial judge.

2. The defendants in error moved for a rehearing on two grounds. First. That the court has overlooked Civil Code of 1910, § 4538, and the two decisions of *Board of Education* v. *Felder*, 116 *Ga.* 788 (43 S. E. 56), and *McCaskill* v. *Bower*, 126 *Ga.* 341 (54 S. E. 942), which they contend are controlling authority to the effect that mandamus lies as an adequate remedy to enforce a stockholder's right to examine the books of a private corporation. This question was thoroughly considered when the case was decided and no new light is thrown upon the question in the motion for rehearing. The second ground of the motion for rehearing is that the court overlooked the decisions of *Fender* v. *Shaw*, 135 *Ga.* 224

(69 S. E. 110), and *Peek* v. *McKinney,* 135 *Ga.* 430 (69 S. E. 574), which they contend are controlling as authority to the effect that the judgment rendered by this court is an adjudication that the trial judge was authorized at an interlocutory hearing to grant final relief. The ruling of this court was that "the stockholders have the right to examine the books of the corporation under reasonable regulations," and the evidence showed that they were denied this right, and therefore that the injunction for this reason should have been granted. By this it was meant that the court should have granted the temporary injunction until further order of the court. This is intended in no sense as a judgment granting final relief. Moreover, the inspection of the minutes is a mere incident to the final relief sought by the petitioners; and if it is determined on the final trial that an inspection of the books of the company is sought for motives other than those prescribed by law, and pointed out in the opinion, it is to be assumed that the right will be denied.

For these reasons both motions for rehearing are denied.

On the motion for rehearing HINES, J., dissents from the judgment of reversal.