BENJAMIN S. STERN *vs*. THOMAS F. SULLIVAN.

York.      Opinion, December 3, 1936.

*Armstrong & Spill*, for plaintiff.
*Daniel F. Armstrong*,
*Hilary F. Mahaney*, for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

MANSER, J.    On motion. Case for damages arising out of alleged abuse of process. Verdict was for the plaintiff in the sum of $150. Sullivan sued Stern in assumpsit upon an account annexed amounting to $200 and made the affidavit required by R. S., Chap. 124, Sec. 2, to authorize his arrest on mesne process. After the general provision that no person shall be arrested on mesne process in a suit on contract, the exception to this prohibition provided for in Sec. 2 reads as follows:

> "Any person, whether a resident of the state or not, may be arrested and held to bail, or committed to prison on mesne process on a contract express or implied, if the sum demanded amounts to ten dollars, or on a judgment on contract, if the debt originally recovered and remaining due is ten dollars or more, exclusive of interest, when he is about to depart and reside beyond the limits of the state, with property or means of his own exceeding the amount required for his immediate support, if the creditor, his agent or attorney makes oath before a justice of the peace, to be certified by such justice on said process, that he has reason to believe and does believe that such debtor is about so to depart, reside, and take with him property or means as aforesaid, and that the demand, or principal part thereof, amounting to at least ten dollars, is due to him."

For more than a hundred years, since the statute of 1835, Chap. 195 for the relief of poor debtors, the law has prohibited the arrest of a debtor on a writ declaring on a contract except in accordance with the provisions now found in the statute above cited. Soon after the passage of the original act, the Court in *Whiting* v. *Trafton*, 16 Me., 398 construed it as follows:

> "The design of this statute was not only to afford prima facie evidence that a debt was due to the plaintiff from the defendant, but also to prevent unreasonable detentions of the person by arrest, when there were no good grounds for believing that an intention existed on the part of the debtor, to withdraw himself and his property from the jurisdiction of the State, by establishing his residence beyond its limits. It certainly did not mean to give encouragement to capricious ar-

rests, when a person was preparing for a mere journey for a short time, with the intention of returning and maintaining his residence in the state, and to be amenable to the first execution, when it should be recovered against him . . . . It is a measure against the liberty of the citizen. And the preparatory steps must contain a full and clear compliance with the preliminary requirements of the statute."

Again in *Dunsmore* v. *Pratt*, 116 Me., 22, 99 A., 717, 718, the Court said:

"The process is a drastic remedy for the collection of debt, and the oath must be not only practically perfect in form, but it must be based on good faith. Creditors, their agents and attorneys, solemnly swear that they believe and have reason to believe the truth of all statements required by the statute. Such belief should be derived from facts and evidence sufficient in themselves to justify a man of ordinary prudence and caution, when calm and not swerved by self-interest from the realms of reason and common sense, in believing the truth of the statements to which he makes oath."

The facts show that the writ in the original case was issued and placed in the hands of an officer on January 29, 1936. Both creditor and officer learned that Stern was then out of town, probably in Portsmouth, N. H. The officer held the writ for three days when Stern was arrested, not on the eve of his departure but upon his return to Biddeford, the city of his residence. The evidence fails to show any overt act on the part of Stern indicating that he was about to depart and reside outside the state. His office, in the same building with that of the creditor, remained in its usual condition. His home was undisturbed. The members then constituting his family were still in Biddeford, his wife at home, one daughter at work in a local factory and a son recently graduated from high school and not yet employed.

The present defendant must rely for justification in causing the arrest of Stern upon statements attributed to the latter concerning his intentions. Such statements were denied. As reported by witnesses for the present defendant, they were coupled with announcements that Stern intended to engage in business in new territory.

The record contains credible evidence from which the jury might have concluded that the inferences drawn by the creditor were not warranted or that the statements themselves were not made.

Again, it is essential not only that the creditor should have reason to believe and did believe that the debtor was about to depart and reside beyond the limits of the state, but also that he was to take with him property or means exceeding the amount required for his immediate support. This second element lacks any substantial support in the record. The creditor knew that the debtor was having a hard time to make a living; that he had no apparent means except what he had been able to earn as a window washer and janitor. He had recently taken the agency for the sale of automobile trade books which required that he make transient trips to other places, some within and some without the state. Aside from a few dollars for living expenses, the only property or means which the debtor took consisted of a bundle of books which he had for sale and which were not shown to be his own property.

The present defendant also contends that he should not be held responsible for the act of the deputy sheriff in making the arrest because the deputy did not obey his instructions. His complaint is, that the officer conferred with the attorney for the debtor, ascertained when he would return, arranged to make the arrest in the office of the attorney and provided an opportunity for the debtor to furnish bail. This, the present defendant terms collusion between the deputy and the plaintiff's attorney. It appears, however, that if there were any departure from instructions on the part of the deputy sheriff, his actions as to the arrest were not as drastic as the creditor desired. The jury would be warranted in finding that he directed the deputy to arrest the plaintiff without notice and take him to Alfred jail.

The defendant, in his brief, asserted that there was error prejudicial to his rights, by reason of certain comments and expressions during the course of the trial by the presiding Justice. No exceptions were taken and the defendant can not now complain. It may be noted, however, that an examination of the record shows only a proper supervision and direction by the presiding Justice as to the scope of inquiry and the admissibility of evidence.

The principles pertinent to abuse of process have been carefully

defined and elaborated by our court in *Saliem* v. *Glovsky et al.*, 132 Me., 402, 172 A., 4 ; *Lambert* v. *Breton*, 127 Me., 510, 144 A., 864, and the authorities therein reviewed. A restatement is unnecessary. Judged by the rules so well established, the defendant fails to show that the verdict was against either the law or the evidence.

The defendant complains that the damages awarded were excessive. The plaintiff had been a resident of Biddeford for sixteen years, had represented the city in the legislature for several terms, and might well be considered as in reputable standing in the community. He was in custody for an hour. He was obliged to obtain the sureties on his bail bond. Humiliation and mental distress are difficult to measure in money. The jury is ordinarily better qualified than the court to make the assessment in a given case. Applying the well-known rules as to damages, the Court can not say that the amount awarded was excessive.

*Motion overruled.*