[Civ. No. 7808.    Third Dist.    Jan. 25, 1951.]

GEORGE B. PIMENTEL, Respondent, v. LOREN C. HOUK, Appellant.

C. Ray Robinson for Appellant.

Landram & Silveira for Respondent.

ADAMS, P. J.—Plaintiff sued defendant for the collection of two promissory notes. Defendant filed an amended answer and a ''counterclaim and/or cross-complaint,'' the latter being in two counts. In the first count defendant sought damages against plaintiff, alleging that he was the lessee of certain lands and the owner of certain implements and farming equipment essential for the farming of his leased lands upon which he had growing crops of beets, peas, onions and lettuce; that plaintiff, at the time of the filing of his action against defendant, caused a writ of attachment to issue, and, well knowing that defendant's farming equipment was necessary for the farming of his land, ''because of that fact, and not for the purpose of collecting the alleged debt sued upon in said action, but for the sole, single and express purpose of financially destroying defendant and cross-complainant, did, wilfully, deliberately and maliciously cause said Writ of Attachment to be served and levied upon the said tractors, tillage implements and

farming equipment hereinabove referred to"; and that "as the sole, direct and proximate result of the said wilful, deliberate and malicious serving and levying of said Writ of Attachment, this defendant and cross-complainant was deprived of the use and possession of said tractors, tillage and farming equipment," and "as the direct and proximate result of the wilful, deliberate and malicious levy" of the said writ there were lost and destroyed large acreages of sugar beets, peas, onions and lettuce, of varying values set forth, approximating a total of $50,000.

In the second count it was alleged that plaintiff interfered with the conduct of defendant's farming business by wilfully, deliberately and maliciously filing his action against defendant; that plaintiff well knew that the tractors, etc., were essential to defendant's farming business and did wilfully, deliberately and maliciously cause the writ of attachment "to be issued and levied upon said tractors, tillage implements and farming equipment, all with the intent to injure and harass this defendant and cross-complainant, and for the sole, single and express purpose of destroying the said farming business, and financially injuring defendant and cross-complainant." It was also alleged that plaintiff knew that certain creditors of defendant held chattel mortgages upon some of defendant's equipment, and that he wilfully, maliciously and deliberately interfered with the conduct of defendant's business by personally urging creditors to repossess the mortgaged equipment, all with the intent to injure and harass defendant, and for the sole and express purpose of destroying defendant's farming business, and injuring him financially. Resulting losses, such as were alleged in the first count, were then averred as results of the "levying of said Writ of Attachment."

Plaintiff demurred to the cross-complaint on the ground that it failed to state a cause of action in either count, and on the grounds of uncertainty, ambiguity and unintelligibility for failure to set forth the nature, location or extent of defendant's lands, or what were the alleged tractors, tillage implements and farming equipment, or the nature, location or extent of the crops of beets, peas, onions and lettuce.

The trial court sustained the demurrer without leave to amend, and dismissed the amended cross-complaint. From the latter judgment this appeal was taken.

Appellant makes no contention that plaintiff's action was one wherein a writ of attachment properly might not issue, nor does he contend that the cross-complaint states a cause

of action for malicious prosecution. He concedes that the writ was regularly issued and served; but he urges that his cross-complaint is based upon an abuse of process. Quoting from 80 American Law Reports, 580, 581, he urges that "an action for the abuse of attachment process may be maintained although the attachment has not been vacated"; and that the "gist of an action for abuse of process is the improper use of process after it has been issued." The question, then, is whether the process in this case was used for an improper purpose.

In Prosser on Torts, at pages 894-895, it is said: "The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. . . . The ulterior motive may be inferred from the wrongful use made of the process, but the use itself may not be inferred from the motive."

In the case before us it may be conceded that the allegation that plaintiff caused the attachment to issue without any purpose of collecting the debt but solely for the purpose of destroying defendant financially, may constitute a sufficient allegation of an ulterior purpose; but we are of the opinion that defendant failed to allege use of the process for a purpose not proper in the regular conduct of the proceeding. It was entirely proper in the regular proceeding—to collect the notes sued upon—for plaintiff to resort to an attachment of defendant's assets. It is not alleged that said attachment covered property exempt from execution, that it covered an excessive amount of defendant's property, that the debt alleged to be owed by defendant was otherwise secured, or that defendant requested that the levy be made upon other property. On the face of the record plaintiff was fully within his rights in causing the writ of attachment to be issued and served; and the fact that he may have had an ulterior motive to destroy defendant financially did not render the use of the writ one improper in the regular conduct of the proceeding. Had plaintiff attached without malice, the effect would have been the same.

It is said in 1 Ruling Case Law, 103:

"The precise requisites of an action for abuse of process

have not been very clearly pointed out. It would seem to be only where process is perverted, i.e., directed outside of its lawful course to the accomplishment of some object other than that for which it is provided, that one, acting upon probable and reasonable cause, may yet become liable for misusing the process as to be guilty of an abuse thereof. And to constitute such improper direction of process, the mere existence of an ulterior motive in doing an act proper in itself does not suffice, but there must be such a use of it as is in itself without the scope of the process and improper, from which motive may perhaps be inferred. It would seem both from authority and reason that to sustain the action these two elements are essential: (1) the existence of an ulterior motive, and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge. The first of these elements may, perhaps, be inferred from the second, but the existence of the first cannot, in reason, dispense with proof of the second; for if the act of the prosecutor be in itself regular, the motive, ulterior or otherwise, is immaterial. The test is probably whether the process has been used to accomplish some unlawful end, or to compel the defendant to do some collateral thing which he could not legally be compelled to do.''

Also see 1 American Jurisprudence, pages 178-179.

In *Melton* v. *Rickman,* 225 N.C. 700 [36 S.E.2d 276, 162 A.L.R. 793], it is said that abuse of process consists in the malicious misuse or misapplication of such process after issuance, to accomplish some purpose not warranted or commanded by the writ; that it is the malicious perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is attempted to be secured (citing 1 Am.Jur. 176 and numerous cases), and that evil purpose alone is not sufficient; that the bad intent must culminate in the abuse, for it is the latter which is the gist of the action; that regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process.

The opinion in *Hauser* v. *Bartow,* 273 N.Y. 370 [7 N.E.2d 268, 269], states that process must be used for something more than a proper use with a bad motive; that if a party uses it for the immediate use for which it was intended, he is ordinarily not liable, notwithstanding a vicious or vindictive motive; that if he uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of process. And in *Docter* v. *Riedel,* 96 Wis. 158 [71 N.W.

119, 120], it is said that when one exercises a legal right his undisclosed motives are immaterial; and it was ordered that a demurrer to the complaint be sustained. *Saliem* v. *Glovsky,* 132 Me. 402 [172 Atl. 4, 6], holds that to sustain an action for abuse of process two elements are essential: (1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge; and that existence of the first cannot dispense with the proof of the second; for if the act of the prosecutor be in itself regular, the motive is immaterial; that regular use of process cannot constitute abuse even though the user was actuated by a wrongful purpose, motive or intent. To the same effect see *Bourisk* v. *Derry Lumber Co.* (Me.), 156 Atl. 382.

In *Manufacturers etc. Corp.* v. *Lane,* 221 N.C. 189 [19 S.E. 2d 849, 853], it is said that the gist of an action for abuse of process is the improper use of the process after it has been issued, citing 1 American Jurisprudence, Abuse of Process, section 34, stating two elements necessary, as stated heretofore. It was also said that there is no abuse of process where it is confined to its regular and legitimate function in relation to the cause of action stated in the complaint; that if the plaintiff has brought the action or instituted the process and prosecuted the same with malice and without probable cause, the complainant may have his full relief by an action for malicious prosecution. To the same effect is *Ellis* v. *Wellons,* 224 N.C. 269 [29 S.E.2d 884, 885], where it was said that where the process has been lawfully issued and subsequently has wilfully been perverted so as to accomplish a result not commanded by it or lawfully obtainable under it, the action for abuse of process lies. In *Mullins* v. *Sanders,* 189 Va. 624 [54 S.E.2d 116, 121], 1 Cooley on Torts, 3d edition, page 335, is quoted, as well as 1 American Jurisprudence, Abuse of Process, section 2, page 176, section 3, pages 176, 177, section 6, pages 178, 179. Also see *Priest* v. *Union Agency,* 174 Tenn. 304 [125 S.W.2d 142]. Other cases might be cited, but the foregoing from various jurisdictions show the general trend of decisions.

Respondent relies upon *Tranchina* v. *Arcinas,* 78 Cal.App. 2d 522 [178 P.2d 65], but we think that case is distinguishable on its facts. There the defendant, as actor in another proceeding, wilfully deceived the O.P.A. into giving him a certificate permitting an action to evict a tenant "solely for the purpose of occupancy by" a purchaser, when such was

not his purpose.  O.P.A. regulations provided that no tenant should be removed from any housing accommodation unless the landlord sought in good faith to recover possession of the accommodations for his immediate use and occupancy. The court observed that these regulations so modified the local law *pro tanto* as to prohibit the eviction of a tenant for other than the purposes or reasons authorized therein, and it followed, it said, that the law prohibited evicting the plaintiffs for any other purpose than the one stated in the certificate. Armed with this certificate, eviction proceedings were carried through, resulting in a writ of restitution, on the presentation of which by the sheriff the tenant moved out and later brought the action for abuse of process, succeeding in obtaining findings from the superior court in that action that the foregoing were the facts underlying the apparent legality of the proceedings.  The opinion declared that, in view of the findings of the court, the defendants must be held to have procured a judgment in unlawful detainer for the purpose of evicting the tenants ''for a purpose forbidden by law.''  This the court described as a perversion of the process.  It seems clear that the tort in the cited case lay in the violation by the landlord of a legal duty he owed the tenant.  When those two parties contracted they knew that the tenant could not be evicted except for certain purposes.

Cross-defendants in the case before us not only owed no legal duty to protect cross-complainant from injury incidental to the levy of attachment, but impliedly the parties had contracted that, notwithstanding calamitous results, cross-defendants would still have the right to cause the levy to be made.  The reverse was true in *Tranchina* v. *Arcinas, supra,* for there, faced with the legal duty of permitting peaceful enjoyment of the demised premises, except upon certain conditions, the defendant, in violation of that duty, embarked upon a continuous, fraudulent and oppressive course of conduct by which he made the government agency and the state's courts the vehicle of tortious injury.  The law did not do injury—the landlord did; here the defendant did no injury —the law did.

The judgment is affirmed.

Peek, J., and Van Dyke, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 26, 1951.  Carter, J., and Schauer, J., voted for a hearing.