896 F.Supp. 1563 (1995)
Edward Vaughn KELLER, Plaintiff,
v.
RAY, QUINNEY & NEBEKER, a professional corporation; Lisa Yerkovich, Richard H. Casper, and Sterling Johnson, Defendants.
Civ. No. 94-C-577W.
United States District Court, D. Utah, Central Division.
September 6, 1995.
*1564 *1565 Edward Vaughn Keller, Las Vegas, NV, pro se.
Stephen B. Nebeker, Scott A. Hagan, Ray, Quinney & Nebeker, Salt Lake City, UT, for defendants.
MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
WINDER, Chief Judge.
This matter is before the court on defendants Ray, Quinney & Nebeker ("RQN"), Lisa A. Yerkovich ("Yerkovich"), Richard H. Casper ("Casper"), and Sterling Jardine's ("Jardine") (collectively "Defendants") motion for summary judgment. A hearing on this motion was held July 18, 1995. Plaintiff Edward Vaughan Keller ("Keller" or "Plaintiff") appeared pro se. Scott A. Hagan represented Defendants. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to this motion. Now being fully advised, the court enters the following memorandum decision and order.

I. BACKGROUND

In April of 1990, plaintiff Keller entered into a lease/option-to-purchase agreement with D. Chris Buttars ("Buttars") relating to a convenience store and gasoline service center ("Center") located in West Jordan, Utah. Shortly after he began operating the Center, Keller completed a commercial credit application ("Supply Agreement") with Jardine Petroleum Co. ("Jardine Petroleum") wherein he contracted to purchase automotive fuel supplies for use at the Center. Keller also contracted with Jardine Petroleum for transport of Jardine Petroleum's products to other customers. Defendant Jardine is chief executive officer of Jardine Petroleum.
In connection with the Supply Agreement, Jardine Petroleum provided Keller with an electronic charge card terminal and two manual charge card processors ("credit card equipment"). Keller admits that he did not own the credit card equipment.
On January 31, 1991, Jardine Petroleum filed suit against Keller in the Utah Third Judicial District Court ("Jardine Lawsuit"). Among other things, the Jardine Lawsuit alleged that Keller had failed to fully pay for petroleum deliveries and therefore owed $85,311.97 to Jardine Petroleum. See Complaint at ¶ 7, Case No. XXXXXXXXXCN (Jan. 31, 1991) (Exh. B to Defendants' Motion for Summary Judgment, Case No. 94-C-577W (Mar. 23, 1995) [hereinafter Summary Judgment Memo.]). The Jardine Lawsuit also alleged that the credit card equipment "create[s] a draft or voucher payable to [Jardine Petroleum] each time [it is] used, and as such belong to [Jardine Petroleum]. [Keller] has refused to deliver those drafts or vouchers to [Jardine Petroleum] and, indeed, has sought to negotiate them for himself." Id. at ¶ 17.
On the same day that the Jardine Lawsuit was filed, the state district court issued a prejudgment writ of replevin for return of both the credit card equipment and the drafts and vouchers that had been processed through that system. This writ was served by Constable Dennis Murray ("Constable Murray"), who seized the credit card equipment and invoices totaling $12,912.42. See Affidavit of Dennis Murray at ¶ 4 (Mar. 22, 1995) [hereinafter Murray Aff.] (attached to Summary Judgment Memo.).
On May 24, 1991, the state district court issued a judgment "upon all claims" in the Jardine Lawsuit ("Jardine Judgment"). In the judgment, the court pointed out that Keller had been given "specific set-offs to the account." See Order and Judgment, Case No. XXXXXXXXXCN (May 14, 1991) (Exh. F to Summary Judgment Memo.). The court then found in favor of Jardine Petroleum and against Keller for $62,049.26, together with interest of 21% annually from and after March 31, 1991 until paid, plus attorneys' fees and costs of $19,431.82. Defendants RQN, Yerkovich, and Casper are the law firm and lawyers who represented Jardine Petroleum in collecting that judgment, which Keller admits that he did not appeal.
*1566 At this point, it is necessary to shift the focus to a second lawsuit in which Keller was the defendant. Approximately six weeks after the initiation of the Jardine Lawsuit, on about March 13, 1991, Buttars also filed suit against Keller in the Utah Third Judicial District Court ("Buttars Lawsuit"). Pursuant to the Buttars Lawsuit, the state district court ordered Keller to deliver possession of the Center to Buttars. In addition, the court permitted Keller to remove his personal property from the Center, but prohibited Keller from removing any of Buttars' personal property. See Order Dissolving Restraining Order at ¶¶ 2-3, Case No. XXXXXXXXX (Mar. 21, 1991) (Exh. H to Summary Judgment Memo.). It also listed specific property that Keller was allowed to remove, and other property that Buttars was to retain. As Keller admits, however, he removed some of Buttars' personal property from the Center. See Memorandum in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment at p. 6, Case No. 94-C-577W (Apr. 25, 1995) [hereinafter Plaintiff's Response]. Consequently, on May 6, 1991, the state district court issued a prejudgment writ of attachment and writ of assistance in the Buttars' Lawsuit which allowed Buttars to attach possession of items of his personal property located in: (1) a storage unit Keller maintained at National Rental in Salt Lake City ("National Unit"), and (2) a semi-trailer which had been moved to the premises of Jardine Petroleum. See Prejudgment Writ of Attachment at pp. 1-2, Case No. XXXXXXXXXCN (May 6, 1991) [hereinafter Buttars' May 6 Writ] (Exh. I to Summary Judgment Memo.). This writ also commanded the Salt Lake County Sheriff to return to the state court "a full inventory of property attached."[1]Id. at p. 2. On May 7, 1991, Deputy Salt Lake County Constable Orson Madsen ("Constable Madsen") served this writ on: (1) the manager of National Rental, and (2) defendant Jardine.[2] Madsen Aff. at ¶¶ 2-3. Concerning the attachment, Constable Madsen testified that "[a]t the time I served the aforementioned documents, I removed the locks on the storage unit ... and the semi-trailer and replaced them with locks of my own to maintain the security of the contents. I also conducted an inventory."[3]Id. at ¶ 4. Approximately three months later, the state district court issued a writ of execution in the Buttars Lawsuit allowing Buttars to remove his personal property from the National Unit and the semi-trailer. See Writ of Execution, Case No. XXXXXXXXXCN (Aug. 5, 1991) (Exh. K to Summary Judgment Memo.). On August 6, 1991, Constable Madsen served this writ on Keller and the manager of National Rental, and another deputy constable served Jardine Petroleum. See Madsen Aff. at ¶ 5. Less than a week later, on August 10, 1991, Constable Madsen removed Buttars' personal property items from both the National Unit and the semi-trailer, inventorying them at the same time.[4]Id. at ¶ 6.
The focus now shifts back to the Jardine Judgment, entered on May 24, 1991. In its *1567 May 24 Writ, the state district court commanded the Salt Lake County Constable to:
collect the aforesaid judgment and costs, together with the costs of this execution, and to levy on and sell enough of the unexempted personal property, or if enough unexempted personal property cannot be found, then of the unexempted real property of the said E. Vaughn Keller to satisfy the same with all legal costs accruing hereon, and this shall be your sufficient warrant for so doing.
See Jardine's May 24 Writ at p. 2. Pursuant to this judgment, the state district court issued a writ of assistance and praecipe in support of writ of execution and writ of assistance on June 11, 1991. These documents authorized seizure of Keller's "black briefcase which contains money, is four inches in depth, has a combination or key lock, and is in defendant's possession." See Writ of Assistance/Praecipe in Support of Writ of Execution, Case No. XXXXXXXXXCN (June 11, 1991) (Exh. M to Summary Judgment Memo.). Deputy Salt Lake County Constable Michael A. Martinez ("Constable Martinez") served these documents on Keller that same day, seizing a briefcase from Keller's possession.[5] The briefcase was then opened by a locksmith, inventoried, and found to contain $43,360.86 in currency and checks. Affidavit of Michael A. Martinez at ¶¶ 4-5 (Mar. 23, 1995) (attached to Summary Judgment Memo.). After the inventory, Constable Martinez turned the currency and cashier's checks over to Jardine Petroleum's lawyer, defendant Yerkovich. Id. at ¶ 5.
On June 4, 1991, also pursuant to the Jardine Judgment, the state district court ordered that a storage unit located at A-1 Access Storage ("A-1 Unit") be opened and that all of Keller's non-exempt personal property found therein be released to Jardine Petroleum. See Order Allowing Inspection and Execution of Defendant's Property and Storage Areas, Case No. XXXXXXXXXCN (June 4, 1991) (Exh. O to Summary Judgment Memo.). On June 6, Constable Murray took the following actions: (1) served this order on Keller, (2) posted a copy at the A-1 Unit, (3) inventoried the A-1 Unit, and (4) released the contents to Jardine Petroleum.[6] Murray Aff. at ¶¶ 7-8. In addition to the property in the A-1 Unit, Keller agrees that the property which remained in the National Unit and the semi-trailer after Buttars had removed his personal property on August 6, 1991 (which property had previously been inventoried by Constable Madsen pursuant to the Buttars Lawsuit) was retained by Jardine Petroleum pursuant to its judgment. See Plaintiff's Response at p. 7. The contents of the A-1 Unit and the National Unit were later consolidated into a single storage unit ("Consolidated Unit"). See Murray Aff. at ¶ 10.
A public sale of the contents of the two storage units and the semi-trailer was held January 27, 1992the delay having been caused by Keller having either filed bankruptcy or having obtained a court order against the sale. Plaintiff admits that the sale was held after appropriate notice.[7] Plaintiff's Response at p. 9. The only bid at the sale was one for $8309.00 made by Jardine Petroleum.[8] The attached property was sold to Jardine Petroleum for this amount, Constable Murray having testified that it was his opinion and that of a second constable *1568 that the "bid constituted reasonable value."[9]See Murray Aff. at ¶ 13.
On June 8, 1994, Plaintiff Keller filed the instant action, stating the following causes of action: (1) abuse of process, (2) conspiracy to abuse process, and (3) intentional infliction of emotional distress ("IIED"). See Complaint, Case No. 94-C-577W (June 8, 1994) [hereinafter Keller's Complaint]. In its preface, Keller's Complaint states that "[t]he case arises out of Defendant's [sic] representation of one STERLING JARDINE ... and Jardine Petroleum Co., Inc. in prosecuting a prior collection action against [Keller]." See Keller's Complaint at p. 1. More specifically, it asserts that:
[] On or about May 29, 1991, Defendant JARDINE obtained a Judgment against Plaintiff KELLER....
[] On or about June 4, 1991, Defendant JARDINE, represented by Defendant YERKOVICH, of Defendant, RAY, QUINNEY, & NEBEKER, received the Order they had requested of the Court, allowing inspection and execution of attachment for Plaintiff KELLER'S property and storage areas. Pursuant to this same Order and Writ of Attachment, Jardine Petroleum Co., Inc., purporting to satisfy the approximately $80,000.00 (plus) judgment, seized personal and business property, cash and other assets far in excess of the judgment obtained.

Id. at ¶¶ 11-12 (italicized emphasis added). Keller's Complaint also alleges that "Defendant JARDINE tried threats and all manner of coercion towards Plaintiff KELLER and stated to other persons that he would `follow (Plaintiff) KELLER until the day he died....'" Id. at ¶ 20.
Defendants' motion for summary judgment seeks dismissal of Plaintiff's three claims based on the following arguments: (1) there has been no abuse of process because there was no excessive seizure, (2) alleged threats by Defendants do not constitute abuse of process, (3) Plaintiff waived the right to complain about excessive seizure when he failed to contest alleged excessive seizures and public sales in the state district court, (4) the conspiracy to abuse process claim must be dismissed because there is no underlying abuse of process tort, and (5) the IIED claim must be dismissed because Keller's Complaint does not allege any actual emotional distress, and also because neither alleged harsh statements nor the exercise of legal rights are "outrageous conduct."
Plaintiff's arguments in opposition are essentially that: (1) the seizure of assets was excessive, (2) Defendants acted with malice both before and after process issued in the Jardine Lawsuit, (3) Plaintiff did not waive his right to object to the state district court proceedings, (4) there was a conspiracy, since numerous unlawful acts were committed by Defendants as well as non-parties, and (5) the IIED claim should not be dismissed because emotional distress was the "obvious" outcome of Defendants' outrageous actions.

II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, *1569 and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Wright v. Southwestern Bell Tel. Co., 925 F.2d 1288, 1292 (10th Cir.1991).
Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the `depositions, answers to interrogatories, and admissions on file,' designate `specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Gonzales v. Millers Casualty Ins. Co., 923 F.2d 1417, 1419 (10th Cir.1991).[10] The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S.Ct. at 2552.
In considering whether there exist genuine issues of material fact, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); Clifton v. Craig, 924 F.2d 182, 183 (10th Cir.), cert. denied, 502 U.S. 827, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991).[11] Finally, all material facts asserted by the moving party shall be deemed admitted unless specifically controverted by the opposing party. D.Utah R. 202(b)(4).

III. DISCUSSION

Due to the unfocused nature of a number of the arguments and/or allegations made pursuant to this motion, it is essential that a concise statement of the parties and issues precede any analysis.
First, the following persons and entities are not defendants in this action, and their alleged misdeeds have no bearing on whether the Defendants here are liable for abuse of process: (1) D. Chris Buttars, (2) Jack White, (3) Alpha Transport, Inc., (4) Denton L. Dunn, (5) DLD Distributing Co.[12]
Second, although Keller's Complaint alleges abuse of process due to an excessive seizure conducted pursuant to the Jardine Judgment, it does not specify which items actually comprise the excessive seizure. Plaintiff Keller has, however, provided substance to this issue via admissions made in a deposition[13] taken in connection with a separate but related action filed in this district. See Keller v. Jardine Petroleum Co., et al., Case No. 94-NC-086J (June 7, 1994). In this deposition, Keller agreed that the assets which were the subjects of the excessive seizure pursuant to the Jardine Judgment were: (1) the contents of the two storage units, (2) the contents of the briefcase, and (3) the Center and its contents.[14]See Deposition *1570 Upon Oral Examination of Edward Vaughn Keller at pp. 172-180 (Sept. 29-30, 1994) [hereinafter Keller Depo.] (attached to Memorandum in Support of Defendants' Motion for Summary Judgment, Case No. 94-NC-086J (Nov. 1, 1994)).
Finally, Keller's Complaint states a claim for abuse of process only, and consequently is neither an attack on the Jardine Judgment nor on the Jardine Lawsuit. The Utah Supreme Court recognizes that a judgment which is not appealed "must be regarded as valid." Crease v. Pleasant Grove City, 30 Utah 2d 451, 519 P.2d 888, 889-90 (1974). Thus, because Keller did not appeal the Jardine Judgment, the actual judgment and all subjects subsumed therein are immaterial here. Furthermore, since Keller's Complaint alleges only abuse of process, it does notby definitionattack the Jardine Lawsuit per se:
A cause of action for abuse of process is quite different in character from those which are concerned with the initiation of a proceeding against the victim.... Therefore, whether there [is] an abuse of process is to be determined as an issue independent from the rightness or wrongness of the prior steps in [a] proceeding.
Id. at 890. An action challenging the initiation of a lawsuit is an action for malicious prosecution or for wrongful bringing of civil proceedings, and not for abuse of process:[15]
Abuse of process differs from malicious prosecution [in either civil or criminal proceedings] in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, once it is issued, is the only thing of importance. Consequently in an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding has terminated in his favor, or that the process was obtained without probable cause or in the course of a proceeding begun without probable cause.
W. Page Keeton et. al., Prosser and Keeton on the Law of Torts § 121, at 897 (5th ed. *1571 1984) (emphasis added) [hereinafter Prosser on Torts]; see also, e.g., Nevada Credit Rating Bureau, Inc. v. Williams, 88 Nev. 601, 503 P.2d 9, 12 (1972) ("The action for abuse of process hinges on the misuse of regularly issued process, in contrast to malicious prosecution which rests upon the wrongful issuance of process.")
Based on the foregoing, the following types of arguments are therefore immaterial in this action:[16] (1) those involving the alleged misdeeds of specified non-parties, (2) those outside the scope of the "excessive seizure" as Plaintiff has defined it, (3) alleged irregularities subsumed in the Jardine Judgment, and (4) challenges to the Jardine Lawsuit per se.

A. Abuse of Process Claim
The Utah Supreme Court has described abuse of process[17] thusly:
the essence of [abuse of process] is a perversion of the process to accomplish some improper purpose, such as compelling its victim to do something which he would not otherwise be legally obligated to do. On the other hand if it is used for its proper and intended purpose, the mere fact that it has some other collateral effect does not constitute abuse of process.
Crease, 519 P.2d at 890. In addition, "whether there was an abuse of process is to be determined as an issue independent from the rightfulness or wrongfulness of the prior steps in the proceedings." Id. Although abuse of process is not well-defined in Utah caselaw, other jurisdictions have examined it more closely. In those jurisdictions it is generally agreed that "`[i]f the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if the plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim.'" Institute for Professional Dev., 536 F.Supp. at 635 (quoting 1 Am.Jur.2d Abuse of Process § 13 (1962)). Moreover, "while the ulterior motive may be inferred from the wrongful use of the process, the wrongful use may not be inferred from the motive." Id. A cause of action for abuse of process may arise through an act by a defendant "outside of the regular and legitimate use of the process resulting in an interference with either the person or property of the plaintiff," such as an excessive execution on a judgment or attaching property in an excessive amount. Farmers Gin Co. v. Ward, 73 N.M. 405, 407, 389 P.2d 9, 11 (1964); see also Pimentel v. Houk, 101 Cal. App.2d 884, 226 P.2d 739, 740 (1951) (recognizing that excessive attachment of property may provide basis for abuse of process claim).
Plaintiff's basic contention is that process issued pursuant to the Jardine Lawsuit and Judgment resulted in an excessive seizure. Specifically, it is alleged that the contents of the two storage units and the briefcase were valued at approximately $243,000.00, an amount far in excess of the sum awarded Defendants in the Jardine Judgment.[18]See *1572 Plaintiff's Response at p. 13. Defendants dispute this characterization.
It is the court's opinion that Plaintiff's abuse of process claim fails for several reasons. First, although the court agrees that parties may testify as to the value of their own property, Plaintiff has submitted no admissible evidence as to items allegedly unaccounted for in inventories of the storage sheds which were conducted by constables. Most important, however, it is clear that when property that is levied upon is sold for less than the amount of the judgment, the seizure/attachment is not considered excessive. See 30 Am.Jur.2d Executions and Enforcement of Judgments § 123 (1994) ("... the levy may not be regarded as excessive where the amount realized is insufficient to satisfy the execution."); 33 C.J.S. Executions § 107(b) (1942) ("A levy is not excessive, of course, where the sale is insufficient to satisfy the execution.").
For example, in Henry & Hutchinson, Inc. ex rel. Henry v. V.M.C. Products, Inc., 84 Ga.App. 613, 66 S.E.2d 775 (1951), machinery alleged to have a value of $4890.00 was levied upon to satisfy a $1306.26 judgment. Id. at 776. The sale of the machinery under levy, however, brought only $808.45. Id. Considering these facts, the appellate court noted: "[t]he evidence shows that the property sold at public outcry for a sum less than the amount of the execution, and under such circumstances, a finding that the levy was not excessive was demanded." Id. Similarly, in Thompson v. Selcer, 142 Ga. 809, 83 S.E. 965 (1914), the court pointed out that when the sale of stock shares which had been attached "brought in" less than the levy, the levy could not be considered as excessive. Id. 83 S.E. at 966. Likewise, in Philip Werlein, Ltd. v. Elloie, 566 So.2d 95 (La.Ct.App. 1990), the court agreed that an excessive seizure had occurred when the monetary amount realized from the sale of property and garnishment of a bank account exceeded the total debt. Id. at 96.
These authorities are particularly persuasive since Keller apparently did not seek to set aside the sale in the state district court due to any alleged inadequacy of consideration, nor for any other reason. In fact, Plaintiff admits that the sale was held after appropriate notice, and has presented absolutely no evidence in support of his statement that Jardine Petroleum was the only party "afforded the opportunity" to bid. The court must therefore conclude that there were no irregularities attending the sale. Furthermore, any arguments which Plaintiff may be attempting to make regarding fraud are not well-taken since his Complaint fails to even state a claim for fraud, much less plead with particularity any circumstances constituting fraud. See Fed.R.Civ.P. 9(b).
Finally, Plaintiff's apparent contention that he was threatened with ruin by defendant Jardine does not state a claim for abuse of process. It is recognized that "even a pure spite motive is not sufficient [to state a claim for abuse of process] where process is used only to accomplish the result for which it was created." Prosser on Torts § 121, at 897. Indeed, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Id. at 898.
In short, the Jardine Judgment entitled Jardine Petroleum to collect a sum far in excess of the $51,669.86 which was ultimately realized from the sale of the contents of the two storage sheds and the attachment of cash and cashier's checks contained in Plaintiff's briefcase. There was therefore no excessive seizure, and there is consequently no merit in Plaintiff's abuse of process claim.

B. Conspiracy to Abuse Process Claim
In order to prove a civil conspiracy, Plaintiff must show the following elements: "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." Israel Pagan Estate v. Cannon, 746 P.2d 785, 790 (Utah Ct.App.1987), cert. dismissed sub nom. Israel Pagan Estate v. Capital Thrift & Loan, 771 P.2d 1032 (Utah 1989). Thus, no cause of action exists if it cannot be shown that defendants/conspirators performed "one or more unlawful, overt acts." Id. at 792. "`If such were not the *1573 rule, obviously many purely business dealings would give rise to an action in tort on behalf of one who may have been adversely affected.'" Id. (quoting Duffy v. Butte Teachers' Union, 168 Mont. 246, 541 P.2d 1199, 1202 (1975)).
In this case, Plaintiff's cause of action for civil conspiracy is based exclusively on his abuse of process claim. Therefore, since the court has found that there was no abuse of process, Plaintiff's civil conspiracy claim is also unfounded.

C. Intentional Infliction of Emotional Distress Claim
There is likewise no merit to Plaintiff's IIED claim. In order to prove a cause of action for IIED, a plaintiff must show:
(a) that the defendant intentionally engaged in some conduct toward the plaintiff considered outrageous and intolerable in that it offends the generally accepted standards of decency and morality (b) with the purpose of inflicting emotional distress or where any reasonable person would have known that such would result, and (c) that severe emotional distress resulted as a direct result of the defendant's conduct.
Russell v. Thomson Newspapers, Inc., 842 P.2d 896, 905 (Utah 1992) (emphasis added) (relying on Samms v. Eccles, 11 Utah 2d 289, 358 P.2d 344, 346-47 (1961)). Regarding the "severe emotional distress" requirement, Utah courts recognize that an action for IIED:
"applies only where the emotional distress has in fact resulted and where it is severe.... It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises.... The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it."
Estate of Grimm v. Roberts, 784 P.2d 1238, 1246 (Utah Ct.App.1989) (emphasis added) (quoting Restatement (Second) of Torts § 46, Comment j (1965)), cert. denied sub nom. In re Grimm, 795 P.2d 1138 (Utah 1990). "[T]he standard for determining whether a plaintiff has experienced emotional distress is subjective [whereas] the standard for determining the outrageousness of the alleged conduct is objective." Retherford v. AT & T Communications, 844 P.2d 949, 976 n. 17 (Utah 1992).
Viewed in light of the fact that severe emotional distress must, in fact, result from any outrageous conduct, Plaintiff's claim must fail because he has not alleged emotional distress. A careful reading of both Keller's Complaint and Response discloses that the sole comment/assertion as to his emotional state is a cursory statement that Defendants' actions were outrageous, and that "[t]he then obvious EMOTIONAL DISTRESS was the outcome." See Plaintiff's Response at p. 17. In short, Plaintiff has failed to describe specific emotional distress at all, much less severe emotional distress.
Furthermore, to state a claim for IIED the plaintiff must also allege conduct by the defendant that is so "outrageous and intolerable ... that it offends the generally accepted standards of decency and morality." In this regard, Plaintiff notes the following alleged outrageous conduct: (1) the excessive seizure, and (2) Jardine's alleged statements that he would crush Plaintiff "like a peanut," "put him out of business," "take everything he owned," and "follow Plaintiff to his grave" unless Keller "dropped his bankruptcy case and permitted ... Jardine to keep all the sized [sic] property with [sic] interference from the Court." See Keller's Complaint at ¶ 17; Plaintiff's Response at p. 16. Viewed objectively, however, these are insufficient to meet this prong of the test.
First, as indicted supra, there has been no excessive seizure. Thus, any alleged emotional distress cannot be grounded therein. Second, this court has previously recognized that:
"conduct [which] would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is *1574 certain to cause emotional distress. Apart from this, there may perhaps be situations in which the actor is privileged to resort to extreme and outrageous words, or even acts, in self-defense against the other, or under circumstances of extreme provocation which minimize or remove the element of outrage."
Singer v. Wadman, 595 F.Supp. 188, 299 (D.Utah 1982) (quoting Restatement (Second) of Torts § 46, Comment g (1965)), aff'd, 745 F.2d 606 (10th Cir.1984), cert. denied, 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 785 (1985).
In this regard, Jardine's seizure of Plaintiff's property to satisfy an undisputed and unappealed judgment was no more than an exercise of legal rights in a permissible way. Moreover, based on the difficulty which Defendants had in collecting that judgment, the court cannot agree that either their actions or the verbalizations related to those actions were outrageous and intolerable.

IV. ORDER

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED that Defendants' motion for summary judgment is GRANTED.
NOTES
[1] This inventory is attached as Exhibit J to the Summary Judgment Memo. See Affidavit of Orson Madsen at ¶ 4 (Mar. 20, 1995) [hereinafter Madsen Aff.] (attached to Summary Judgment Memo.).
[2] Constable Madsen testified that he served the documents on Sterling Jardine "because the documents provided that I was to take custody of equipment stored in a semi-trailer that had been moved to the premises of Jardine Petroleum." Madsen Aff. at ¶ 3.
[3] Keller contends that the Defendants in this case "took" the semi-trailer prior to the May 6, 1991 issuance of the Prejudgment Writ of Attachment in the Buttars Lawsuit, and that "[t]he contents of this `semi' was [sic] valued at approximately $45,000.00, and no inventory was ever given by [Jardine, Yerkovich, Casper, or RQN], or credit for its value, to Plaintiff." Plaintiff's Response at p. 6.

According to documents provided by the parties, however, the first writ of execution/attachment pursuant to the Jardine Lawsuit which might relate to the storage sheds or semi-trailer appears to have been issued on May 24, 1991 after any alleged "taking." See Writ of Execution, Case No. XXXXXXXXXCN (May 24, 1991) [hereinafter Jardine's May 24 Writ] (Exh. M to Summary Judgment Memo.).
[4] Keller contends that neither he nor the court were provided with "proof" of the "actual property" which Buttars removed from the National Unit and the semi-trailer. Plaintiff's Response at pp. 6-7. In addition, Keller alleges that Yerkovich and RQN "allowed Buttars to take property which had been confiscated by [Jardine Petroleum]." Id. at p. 7.
[5] Keller contends that Constable Martinez seized a brown briefcase, not a black briefcase. Plaintiff's Response at p. 8. He does not dispute, however, that the seized briefcase belonged to him and was in his possession.
[6] Although Keller concedes that this was done, he contends that Constable Murray did not assign values to the property and that exempt personal propertyclothing and bootswas given to Jardine Petroleum. Plaintiff's Response at p. 9.
[7] "Notices of sale were posted on the date of 01-20-92 in three public places of the Precinct where property was sold." See Return on Execution Property Sale, Case No. XXXXXXXXX (Feb. 11, 1992) (Exh. Q to Summary Judgment Memo.).
[8] Although Keller agrees that Jardine Petroleum made the only bid, he contends that this occurred "because no one else was afforded the opportunity to so bid." Plaintiff's Response at p. 9. Keller has provided no evidence in support of this statement.
[9] Prior to this sale, Jardine Petroleum had filed a motion in the bankruptcy court requesting termination of the automatic stay on the sale of Keller's attached property. Keller objected, arguing essentially that: (1) Jardine Petroleum had been paid in full, (2) there was no secured claim, (3) some of the property belonged to third parties, and (4) allowing the sale interfered with administration of the estate and was a preferential distribution of estate assets. See Debtor's Objection to Motion of Jardine Petroleum Company for Order Terminating the Automatic Stay, Bankruptcy Case No. 91C-27598 (Dec. 20, 1991) (Exh. A to Reply Memorandum in Support of Motion for Summary Judgment, Case No. 94-C-577W (May 2, 1995) [hereinafter Defendants' Reply]).

The bankruptcy court conducted a hearing on this motion on January 17, 1992. At the hearing, it was pointed out that the Trustee also objected to terminating the stay, primarily because of the uncertain value of the seized property. See Hearing Record at p. 4, Bankruptcy Case No. 91C-27598 (Jan. 17, 1992) (Exh. B to Defendants' Reply). To address the Trustee's objection, Jardine Petroleum called as a witness Douglas Hyer, marketing manager for Jardine Petroleum. Mr. Hyer testified that he had made a determination of the value of the property in the storage units "based on what it would cost Jardine Petroleum to go to a vendor and buy like merchandise" as "new, current stock, current date products." Id. at pp. 7-9. Using this method, Mr. Hyer placed a $32,649.22 value on the goods. Id. at p. 8.
The Trustee did not object to Mr. Hyer's valuation.
[10] The summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex Corp., 477 U.S. at 324, 106 S.Ct. at 2553.
[11] "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Liberty Lobby, 477 U.S. at 252, 106 S.Ct. at 2512.
[12] In opposing this motion, Plaintiff has stated:

And, therein lies the greatest portion of Plaintiff's Complaint: Sterling Jardine, D. Chris Buttars, Jack White, Denton L. Dunn, their appropriate corporations and d.b.a. entities, have taken assets, goods, and other personal property valued at far in excess of the judgment awarded to Jardine Petroleum Co., Inc.
Plaintiff's Response at p. 3.
[13] Although Defendants did not provide the court with excerpts from this deposition, they have apparently been provided to Plaintiff. See Defendants' Reply at p. 3 n. 1.
[14] Keller was asked this question because the complaint in Case No. 94-NC-086 refers to an alleged excessive seizure made pursuant to the Jardine Judgment. See Complaint at ¶¶ 42-45, Case No. 94-NC-086J (June 3, 1994) [hereinafter 94-NC-086J Complaint]. His admission as to the composition of the excessive seizure was prompted by a question concerning the meaning of paragraph 44 of the complaint, which states:

Defendants STERLING JARDINE and Defendants MURRAY, MADSEN, and RIETZ, conspired, while acting under color of state law, to deprive Plaintiff of his 5th and 14th Amendment rights of due process, and ultimately seized in excess of $1,500,000.00 in cash and property belonging to Plaintiff to satisfy the [Jardine Judgment] of $60,000.00.
Id. at ¶ 44. When questioned as to the meaning of this paragraph, Keller responded as follows:
Q. What I want to establish was that we're only talking about two storage units and the Service Center in paragraph 44?
A. What was that now?
Q. Two storage units and the Service Center in paragraph 44?
A. Yes, uh-huh.
See Keller Depo. at p. 178.
In a separate paragraph of the complaint, Keller also included the contents of the briefcase in the alleged "excessive seizure." See 94-NC-086J Complaint at ¶ 45.
[15] The court's research reveals that it is common to confuse abuse of process with malicious prosecution both substantively and also through a failure to recognize distinctions in terminology. As just one example of this, the Model Utah Jury Instructions state that "[a]n abuse of process action requires that the proceedings have terminated in favor of the person against whom they were brought." See Model Utah Jury Instructions Abuse of Process MUJI 10.20 (1993). MUJI 10.20 is supported by citation to Baird v. Intermountain School Federal Credit Union, 555 P.2d 877 (Utah 1976). Baird, however, is not an action for abuse of process, but is instead one for "wrongful bringing of civil proceedings," i.e., malicious prosecution. Indeed, the Utah Supreme Court has even affirmed an action in which an abuse of process claim was brought as a counterclaim. See Smith v. Vuicich, 699 P.2d 763 (Utah 1985). Vuicich is therefore in accord with virtually all authorities in recognizing that an abuse of process claim may be brought prior to termination of proceedingsmost frequently as a counterclaim. See Institute for Professional Dev. v. Regis College, 536 F.Supp. 632 (D.Colo. 1982); American Credit Bureau, Inc. v. Bel-Aire Interiors, Inc., 105 Ariz. 590, 469 P.2d 75 (1970) (en banc); Farm Serv. Coop., Inc. v. Goshen Farms, Inc., 267 Ark. 324, 590 S.W.2d 861 (1979); White Lighting Co. v. Wolfson, 68 Cal.2d 336, 66 Cal.Rptr. 697, 438 P.2d 345 (1968) (en banc); Westland Dev. Co., Inc. v. Romero, 117 N.M. 292, 871 P.2d 388 (Ct.App.1994); Gore v. Taylor, 792 P.2d 432 (Okla.Ct.App.1990); Prosser on Torts § 121, at 897.

In contrast, both malicious prosecution claims and wrongful bringing of civil proceedings claims must await the termination of proceedings in favor of the person against whom they are brought. See, e.g., Prosser on Torts § 121, at 897 & 897 n. 4.
[16] At a minimum, these include the following: (1) seizure of personal property by Buttars pursuant to the Buttars Lawsuit (non-party), (2) the semi-trailer's contents (outside Keller's definition of "excessive seizure"), (3) seizure of the Center and its contents by Buttars (non-party), (4) the alleged $24,000.00 "in the electronic charge card pipeline" on the day of the Jardine Judgment (attacks judgment), (5) disputes regarding the credit card invoices seized pursuant to the Jardine Judgment (subsumed in/attacks judgment), (6) that the credit card equipment was allegedly removed prior to the filing of the Jardine Lawsuit (prior to Jardine Lawsuit), (7) $43,000.00 in transportation charges allegedly owed by Jardine Petroleum on the day of the Jardine Judgment (subsumed in/attacks judgment), (8) that the Jardine Lawsuit was brought without probable cause (challenges lawsuit), (9) the alleged seizure of Keller's trucks on January 28, 1991 without a court order (prior to Jardine Lawsuit and outside definition of "excessive seizure"), and (10) Jardine Petroleum's alleged "taking" of cash by accepting two-signature-required checks which were signed only by William Boynton (outside Keller's definition of "excessive seizure").
[17] Defendants assert that "[u]nder Utah law, abuse of process is found `only when the civil suit is shown to have been brought without probable cause, for the purpose of harassment or annoyance; and it is usually said to require malice.'" Summary Judgment Memo. at p. 10 (quoting Baird, 555 P.2d at 878). However, as indicated supra at note 15, Baird is founded in malicious prosecution and not abuse of process. Defendants' reliance on Baird is therefore misplaced.
[18] The Center and its contents are not discussed because Plaintiff admits that the Defendants in this action had nothing to do with that seizure. See Plaintiff's Response at p. 13.